[S.F. No. 24587. Sept. 6, 1984.]

KATHLEEN PETERSON, Plaintiff and Appellant, v.
SAN FRANCISCO COMMUNITY COLLEGE DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

John J. Conneely, John D. O'Connor, Thomas M. Peterson and Brobeck, Phleger & Harrison for Plaintiff and Appellant.

Leo J. O'Brien, Lawrence A. Margoles and Barfield, Barfield, Dryden & Ruane for Defendants and Respondents.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Assistant Attorney General, Seward L. Andrews and Bruce J. Braverman, Deputy

Attorneys General, as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BROUSSARD, J.**—This case presents the question whether a community college district and its agents have a duty to exercise due care to protect students from reasonably foreseeable assaults on the campus. We conclude that the district does owe such a duty to its students. As we shall explain, we also conclude that while the district is immune from liability for failure to provide adequate police protection, it is not immune for failure to warn its students of known dangers posed by criminals on the campus.

Plaintiff Kathleen Peterson brought this action for damages under California's Tort Claims Act (Gov. Code, § 810 et seq.)[1] against the San Francisco Community College District, a state agency, and its agents. The plaintiff, a student, sustained injuries as a result of an attempted daylight rape in the parking lot area of the City College of San Francisco campus. The trial court sustained defendants' demurrer to plaintiff's first amended complaint without leave to amend and entered a judgment of dismissal.[2]

The complaint consists of two causes of action. In the first cause of action plaintiff alleges that by virtue of a special relationship between the defendant district and herself, the defendants had a duty to protect her and/or to warn her of danger. In her second cause of action plaintiff alleges that defendants are liable under section 835 for maintaining a dangerous condition of property which together with the criminal act of a third party caused her injuries.

### FACTS

■ A general demurrer admits the truthfulness of the properly pleaded factual allegations of the complaint. (*White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222].) The facts as alleged in plaintiff's first amended complaint are as follows:

---

[1] All further statutory references are to the Government Code unless specified otherwise.

[2] Defendants demurred on the grounds that the complaint failed to state a cause of action. In its memorandum of points and authorities defendant also asserted immunity under section 845 (public entity not liable for "failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service").

On April 25, 1978, plaintiff, a student at City College of San Francisco, was assaulted while ascending a stairway in the school's parking lot. An unidentified male jumped from behind "unreasonably thick and untrimmed foliage and trees" which adjoined the stairway and attempted to rape her. The assailant used a modus operandi which was similar to that used in previous attacks on the same stairway. The defendants were aware that other assaults of a similar nature had occurred in that area and had taken steps to protect students who used the parking lot and stairway. Plaintiff relied upon this increased protection.

Plaintiff had been issued a parking permit by the college in return for a fee. Defendants did not publicize the prior incidents or in any way warn the plaintiff that she was in danger of being attacked in that area of campus. Plaintiff sustained physical and emotional injuries and economic loss as a result of the assault.

Although plaintiff has chosen to proceed under two different theories, the primary question before us is whether under the facts as alleged the defendants owed her a duty of care. The question then becomes whether this duty is affected by the fact that the defendants here are a public entity and its agents. Accordingly, we proceed to consider the nature of the relationship between plaintiff and defendants and the duty, if any, which the defendants owed her.

## DUTY

Plaintiff alleges that the following circumstances placed upon the defendants an affirmative duty to exercise due care for her protection: "Having invited [her] onto the campus property, having enrolled her as a student, having issued to [her] a permit to park and use the parking lot and stairway in question in exchange for . . . payment of a fee, having undertaken to patrol the parking lot and stairway in question in the light of the prior incidents of violence in the area, and having induced [her] to rely and depend upon this protection, a special relationship existed between Plaintiff and Defendants pursuant to which Defendants were obliged to take reasonable protective measures to ensure Plaintiff's safety against violent attacks and otherwise protect her from foreseeable criminal conduct and/or to warn her as to the location of prior violent assaults in the vicinity of the subject parking lot and stairway."

We have observed that the question of a duty "'. . . is a shorthand statement of a conclusion, rather than an aid to analysis in itself . . . [b]ut it should be recognized that "duty" is not sacrosanct in itself, but only an

expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection.'" (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], quoting with approval Prosser, Law of Torts (3d ed.) at pp. 332-333.) ■ In considering whether one owes another a duty of care, several factors must be weighed including among others: "'[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]' (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; [citations].) When public agencies are involved, additional elements include 'the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget; . . .' (*Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; see *Smith* v. *Alameda County Social Services Agency* [1979] 90 Cal.App.3d 929 [153 Cal.Rptr. 712].)" (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

■ As a general rule one has no duty to control the conduct of another, and no duty to warn those who may be endangered by such conduct. (Rest.2d Torts, § 315; *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252]; *Thompson* v. *County of Alameda, supra,* 27 Cal.3d 741, 751; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) A duty may arise, however, where "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." (Rest.2d Torts, § 315; *Davidson* v. *City of Westminster, supra,* at p. 203; *Thompson* v. *County of Alameda, supra,* at pp. 751-752; *Tarasoff* v. *Regents of University of California, supra,* at p. 435.) Among the commonly recognized special relationships are that between a common carrier and its passengers, that between an innkeeper and his or her guests, and that between a possessor of land and members of the public who enter in response to the landowner's invitation. (Rest.2d Torts, § 314A.)[3]

---

[3]We have also observed that in some instances the relationship of a school district to its students gives rise to a duty of care. In *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741 [87 Cal.Rptr. 376, 470 P.2d 360], we stated: "While school districts and their

There is no question that if the defendant district here were a private landowner operating a parking lot on its premises it would owe plaintiff a duty to exercise due care for her protection. (See Civ. Code, § 1714;[4] *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 628 [193 Cal.Rptr. 600] [parking lot is " 'an especial temptation and opportunity for criminal misconduct' "; where prior acts of theft and vandalism alleged, defendant owed patrons duty of care].) It has long been recognized that "a possessor of land who holds it open to the public for entry for business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." (Rest.2d Torts, § 344; *Slater* v. *Alpha Beta Acme Markets, Inc.* (1975) 44 Cal.App.3d 274, 278 [118 Cal.Rptr. 561, 72 A.L.R.3d 1264]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 596, p. 2867.) Liability will normally be imposed in circumstances where the possessor has reasonable cause to anticipate the misconduct of third persons. (See *Rogers* v. *Jones* (1976) 56 Cal.App.3d 346, 356 [128 Cal.Rptr. 404]; 4 Witkin, Summary of Cal. Law (8th ed., 1982 supp.) Torts, § 596, p. 302.)

Of particular relevance to our discussion of the defendants' duty is *Campodonico* v. *State Auto Parks Inc.* (1970) 10 Cal.App.3d 803 [89 Cal.Rptr. 270]. In *Campodonico,* plaintiff alleged that a parking lot was constructed

---

employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]' (*Taylor* v. *Oakland Scavenger Co.* (1941) 17 Cal.2d 594, 600 [110 P.2d 1044]; Ed. Code, § 13557. [Citations.] The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' [Citations.] Either a total lack of supervision [citation] or ineffective supervision [citation] may constitute a lack of ordinary care on the part of those responsible for student supervision. . . ." (*Id.,* at p. 747.)

*Dailey* arose in the context of a secondary school where a 16-year-old was killed while engaging in a "slap boxing match." We observed that children of that age "should not be expected to exhibit that degree of discretion, judgment, and concern for the safety of themselves and others which we associate with full maturity." (*Id.,* at p. 748.) The present case, by contrast, does not implicate the duty to supervise the activities of students who are too immature to exercise judgment for their personal safety. Rather, the issue here is the extent of the school's duty to provide safe premises.

[4]Civil Code section 1714 provides in relevant part: "(a) Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ."

and maintained so as to encourage the presence of persons of degenerate tendencies, and that as a proximate result of defendant's negligence plaintiff was assaulted. The court noted at the outset: "Defendant admits that plaintiff was lawfully upon the premises and that a legal duty was owed to her. The nature of that duty has been clarified, simplified, and stated succinctly . . . in . . . *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], as follows: 'It bears repetition that the basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. . . . The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others . . . .'" (*Campodonico, supra,* at pp. 805-806, quoting with approval *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 118-119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], fn. omitted.)

The court further noted that the fact that plaintiff's injuries were caused by a third party would not absolve the defendant of liability: "The concept of intervening causation is inapplicable here; the cause of action is based upon the assumption that an act by a third party caused plaintiff's injuries and is addressed to the issue of whether defendant had a duty to prevent such act. 'If the realizeable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest., Torts, § 449, quoted with approval in *Conner* v. *Great Western Sav. & Loan Assn.* [1968] 69 Cal.2d 850, 869 [73 Cal.Rptr. 369, 447 P.2d 609]; *Richardson* v. *Hamm* [1955] 44 Cal.2d 772, 777 [285 P.2d 269]; *Wallace* v. *Der-Ohanian* [1962] 199 Cal.App.2d 141, 144 [18 Cal.Rptr. 892] and *Hession* v. *City & County of San Francisco* [1952] 122 Cal.App.2d 592, 603 [265 P.2d 542]; see also Rest. 2d Torts, §§ 449 and 447, com. a.)" (*Campodonico, supra,* 10 Cal.App.3d at p. 808.)

■ Under the circumstances of this case, plaintiff, an enrolled student using the parking lot in exchange for a fee, was an invitee[5] to whom the

---

[5]As explained in *Rowland, supra,* at page 119, although we no longer adhere to the rigid classifications of duty based on status, plaintiff's status is relevant under certain circumstances to the question of liability. (See also *Beauchamp* v. *Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 25 [77 Cal.Rptr. 914].)

possessor of the premises would ordinarily owe a duty of due care.[6] (See, e.g., *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793] [bowling alley proprietor owed duty to patron to protect her from assault in parking lot]; *Dillon* v. *Wallace* (1957) 148 Cal.App.2d 447, 451 [306 P.2d 1044] [where business invitor knows about course of conduct of third party which could be dangerous to invitees, duty to forestall such conduct]; *Winn* v. *Holmes* (1956) 143 Cal.App.2d 501 [299 P.2d 994] [duty to protect restaurant patron from injury by third party].) As previously noted, a private owner under similar circumstances would owe the persons using the premises a duty of care. The question remains whether the provisions of the Tort Claims Act preclude the imposition of such a duty on the defendants under the circumstances of this case.

## THE TORT CLAIMS ACT

■ Turning to the Tort Claims Act, we note initially that public entity liability is statutory in nature. (§ 815.)[7] Its provisions, however, are to be read against the background of general tort law. "The conceptual theory of statutory liability under the act is keyed to the common law of negligence and damages. . . ." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.7, pp. 36-37; see *Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826, 831 [87 Cal.Rptr. 173] ["[t]he exclusive sway of statutory rules does not foreclose the aid of common law tort doctrines and analogies in ascertaining and achieving imperfectly expressed statutory objectives"].)

Section 835 is the principal provision addressing the circumstances under which the government may be held liable for maintaining a dangerous condition of public property. It provides in relevant part: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

---

[6]The characterization of students as invitees is not a novel proposition. In *Vreeland* v. *State Board of Regents* (1969) 9 Ariz. App. 61 [449 P.2d 78], *Jesik* v. *Maricopa County Community College Dist.* (1980) 125 Ariz. 543 [611 P.2d 547] and *Relyea* v. *State* (Fla. 1980) 385 So.2d 1378, students were characterized as invitees to whom a duty was owed to make the premises reasonably safe. In both *Jesik* and *Relyea* the danger to the students arose because of criminal conduct by a third party.

[7]Section 815 provides in relevant part: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." Section 830 defines a "dangerous condition" as: ". . . a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."[8]

In general, "[w]hether a given set of facts and circumstances creates a dangerous condition is usually a question of fact and may only be resolved as a question of law if reasonable minds can come to but one conclusion." (*Bakity* v. *County of Riverside* (1970) 12 Cal.App.3d 24, 30 [90 Cal.Rptr. 541]; *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221, 228 [123 Cal.Rptr. 338].)[9]

The majority of cases which have construed these provisions have concluded that third party conduct by itself, unrelated to the condition of the property, does not constitute a "dangerous condition" for which a public entity may be held liable. (See, e.g., *Hayes* v. *State of California* (1974)

---

[8]An issue raised but not vigorously pursued by defendants is that the illegality of the assailant's conduct in this case negates any finding that the property was dangerous when used with "due care." Such a contention was rejected by the Court of Appeal in *Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789 [198 Cal.Rptr. 208], where it was held that the negligent or unlawful conduct of a third party does not preclude a finding that the property was in a dangerous condition when used with due care by the plaintiff.

[9]Defendants argue that the question is to be resolved as a matter of law. This proposition is the exception rather than the rule. Defendants rely upon *Jones* v. *Czapkay* (1960) 182 Cal.App.2d 192 [6 Cal.Rptr. 182], a case which presented a unique set of factual allegations and was decided before the 1963 enactment of the California Tort Claims Act. *Jones* was an action for injuries sustained as a result of the plaintiff's exposure to a person with tuberculosis. The action was brought under the Public Liability Act (former § 53051—liability for dangerous or defective condition). Cases decided under the act state that "[t]he scope of the Public Liability Act is a question of law to be determined by the court." (*Bryant* v. *County of Monterey* (1954) 125 Cal.App.2d 470, 473 [270 P.2d 897]; *Campbell* v. *City of Santa Monica* (1942) 51 Cal.App.2d 626, 629 [125 P.2d 561].)

Section 830.2 now sets forth the criteria for a court to conclude as a matter of law that a condition is not dangerous within the meaning of section 830: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2.)

11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855]; *Stone* v. *State of California* (1980) 106 Cal.App.3d 924 [165 Cal.Rptr. 339]; *Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118 [137 Cal.Rptr. 239]; *Seybert* v. *County of Imperial* (1958) 162 Cal.App.2d 209 [327 P.2d 560]; see also *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492 [147 Cal.Rptr. 898]; *Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484 [135 Cal.Rptr. 296].) The cases so holding have relied primarily on policy considerations and the definition of dangerous condition as a "condition of *property*" for the conclusion that a defect in property is necessary in order to state a cause of action based on the wrongful conduct of third parties. Nothing in the provisions of section 835, however, specifically precludes a finding that a public entity may be under a duty, given special circumstances, to protect against harmful criminal conduct on its property.[10]

In *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707 [159 Cal.Rptr. 835, 602 P.2d 755], this court rejected the contention that a public entity is under no duty to safeguard its property if the property is not inherently dangerous or defective. The plaintiffs in *Ducey* sued for injuries sustained when another car crossed the freeway median and collided with their car. Plaintiffs presented evidence demonstrating that there had been many cross-median accidents on the section of the highway where the accident had occurred, and that a protective barrier might have prevented the injuries sustained. In *Ducey* the state argued that it could not be held liable for damage which occurred not as a result of a physical defect such as a pothole or a crack in a highway but as a result of the absence of a protective device. We concluded, however, that a public entity could be held liable for a dangerous condition of which it had actual or constructive notice and for which it had failed to provide adequate safeguards, stating that ". . . section 835 specifically provides that when a public entity has actual or constructive notice of a dangerous condition, the entity's liability may be predicated on its failure to take protective measures to safeguard the public from dangers that may not necessarily be of the entity's own creation. . . . Thus the language of the applicable statutes refutes the state's argument that it is under no 'duty' to protect the public against dangers that are not created by physical defects in public property." (*Ducey, supra,* at pp. 716-717.)

---

[10]Cases have recognized, for example, that a public entity may be liable for permitting dangerous but not necessarily criminal conduct to occur on its property. (See *Swaner* v. *City of Santa Monica, supra,* 150 Cal.App.3d 789 [liability for permitting vehicles to race on beach]; *Hill* v. *People* (1979) 91 Cal.App.3d 426 [154 Cal.Rptr. 142] [liability for permitting oversized truck to use overpass]; *Quelvog* v. *Long Beach* (1970) 6 Cal.App.3d 584 [86 Cal.Rptr. 127] [liability for permitting autoettes to be driven on sidewalks]; *Bauman* v. *San Francisco* (1940) 42 Cal.App.2d 144 [108 P.2d 989] [liability for allowing baseball to be played in close proximity to sandbox where there were small children].)

It is also clear that intervening criminal conduct cannot absolve the defendant of liability where as here the plaintiff alleges that defendants maintained the property in such a way so as to increase the risk of criminal activity. In *Slapin* v. *Los Angeles International Airport, supra,* 65 Cal.App.3d 484, plaintiff was attacked in a parking lot. Plaintiff alleged that prior to the incident, defendants were aware that the parking lot was unsafe unless properly supervised and maintained. Moreover, plaintiff alleged that defendants " 'carelessly, negligently, and improperly owned, operated, managed, maintained, supervised, controlled, lighted, and secured [the] parking area . . . so as to maintain a dangerous condition of property' . . . ." (*Slapin, supra,* at pp. 486-487.) The Court of Appeal held that the trial court erred in sustaining defendant's demurrer to the dangerous condition theory. "That a mugger thrives in dark public places is a matter of common knowledge. [Citations.] If defendant so poorly lighted the parking lot as to create a substantial risk of muggings, plaintiffs may be able to establish the elements of a cause of action under section 835." (*Id.,* at p. 488.)

The instant case is indistinguishable from *Slapin.* The court in *Slapin* recognized that a defendant may not escape liability by claiming that plaintiff's injuries were caused by a criminal agency when the basis of plaintiff's cause of action is that the defendant created a reasonably foreseeable risk of that criminal conduct. (*Slapin,* at p. 490; 4 Witkin, Summary of Cal. Law, *supra,* Torts, § 643, pp. 2922-2923.) (See also *Lillie* v. *Thompson* (1947) 332 U.S. 459 [92 L.Ed.2d 73, 68 S.Ct. 140] [railroad liable for assault by stranger where woman railroad telegrapher negligently placed in isolated building at night]; *Campodonico* v. *State Auto Parks, supra,* 10 Cal.App.3d 803 [plaintiff could state cause of action based on negligent maintenance of parking lot where she was criminally assaulted].)

 Plaintiff alleges here that the property was in a dangerous condition because the thick and untrimmed foliage and trees around the parking lot and stairway permitted the assailant to perpetrate his crime; she further alleges that defendants were aware of the condition and failed to take reasonable protective measures, including trimming the foliage or warning her of the danger.[11] Defendants' inaction, she alleges, created a reasonably foreseeable risk that she and others using the stairway would be injured. In light of the relationship between plaintiff and defendants as well as the facts known to the defendants, we

---

[11]As we noted in *Ducey, supra,* when a public entity has notice of a dangerous condition, the unreasonable failure to "protect against" the condition may subject it to liability. As defined by statute, "protect against" includes "providing safeguards against a dangerous condition or warning of a dangerous condition." (§ 830.)

conclude that plaintiff has stated a cause of action under the provisions of the Tort Claims Act.[12]

The circumstances here are clearly different from those in *Hayes* v. *State of California, supra,* 11 Cal.3d 469. In *Hayes,* this court articulated two considerations which weighed against holding a university liable for attacks upon two young men who were using the university's beach at night. We noted: "While we acknowledge that the warning called for by plaintiffs might be beneficial in some instances, both public awareness of the prevalence of crime and policy factors militate against imposing a governmental duty to warn in circumstances such as these.

"First, it is indisputable that the public is aware of the incidence of violent crime, particularly in unlit and little used places. Thus, it would serve little purpose for government to further remind the public of this unfortunate circumstance in society.

"Next, to the extent warning of past criminal conduct might serve a beneficial purpose, it—unlike cautioning against a specific hazard in the *use* of property—admonishes against any use of the property whatever, thus effectively closing the area. But determining and regulating the use of public property are better left to legislative and administrative bodies, rather than to the judiciary." (*Hayes, supra,* at pp. 472-473, fn. omitted.)

While these factors may have been appropriate considerations in the context of *Hayes,* they are inapplicable here. In the closed environment of a school campus where students pay tuition and other fees in exchange for using the facilities, where they spend a significant portion of their time and may in fact live, they can reasonably expect that the premises will be free from physical defects and that school authorities will also exercise reasonable care to keep the campus free from conditions which increase the risk of crime. Here the parking lot was not one of the "unlit and little used places" to which we referred in *Hayes.* Plaintiff was lawfully on the campus and was attacked in broad daylight in a place where school officials knew she and others as well as the assailant might be. Further, the warnings

---

[12]A finding that plaintiff has stated a cause of action under section 835 does not result in the defendants' automatic liability. First, the defendants are entitled to any defense which a private person may raise. (§ 815.) Secondly, a public entity is entitled to show that "the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury." (§ 835.4.)

sought here would not result in preventing the students from using the campus or its facilities, only in alerting them to unknown dangers and encouraging them to exercise more caution.

█ An examination of the policies discussed in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, and other cases compels the conclusion that the defendants did in fact owe the plaintiff a duty of care. First, the allegations, if proved, suggest that harm to the plaintiff was clearly foreseeable. In light of the alleged prior similar incidents in the same area, the defendants were on notice that any woman who might use the stairs or the parking lot would be a potential target. Secondly, it is undisputed that plaintiff suffered injury. Third, given that the defendants were in control of the premises and that they were aware of the prior assaults, it is clear that failure to apprise students of those incidents, to trim the foliage, or to take other protective measures closely connects the defendants' conduct with plaintiff's injury. These factors, if established, also indicate that there is moral blame attached to the defendants' failure to take steps to avert the foreseeable harm. Imposing a duty under these circumstances also furthers the policy of preventing future harm. Finally, the duty here does not place an intolerable burden on the defendants.

The fact that the defendants are a public entity and its agents also does not preclude the imposition of a duty of care. █ As we have often noted, the policy of compensating injured parties is an important one. "Unless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by wilful or negligent acts must prevail." (*Ramos* v. *Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93].) As a community college district responsible for overseeing the campus, the defendant and its agents are in a superior position to know about the incidences of crime and to protect against any recurrences.

### Immunity

█ █ Having thus established that the defendants owed plaintiff a duty of care, we turn to the question of immunity. (See *Davidson* v. *City of Westminster, supra,* at pp. 201-202.) █ In her complaint plaintiff alleges that "[d]efendants . . . breached these duties and were negligent and careless in that they failed and neglected to take reasonable precautions to protect [her] from violent attacks or to safeguard her security, failed and neglected to employ adequate police personnel to patrol the parking lot and stairway in question . . . and that they failed to properly perform or otherwise discharge the duty of protection undertaken and assumed."

Although the district is empowered to employ a police force on its campus and apparently did so in this case, the Government Code grants immunity to public entities for failure to provide police protection. (§ 845.) This immunity is meant to protect the budgetary and political decisions which are involved in hiring and deploying a police force. (Cal. Law Rev. Commission com. to § 845.) As a public entity the district may not, therefore, be held liable in this case for any failure to provide adequate police protection.

Plaintiff's complaint, however, alleges not only inadequate police protection but failure to warn her of the known danger and failure to trim the foliage growing by the parking lot stairway. No provision in the Tort Claims Act explicitly immunizes a public defendant for failure to warn. (See *Tarasoff, supra,* 17 Cal.3d at p. 446.) As we noted in *Tarasoff, supra,* the defendant is not immune from liability pursuant to section 820.2 (immunity for discretionary decisions) because the failure to warn does not involve those basic policy decisions which this immunity provision was meant to protect. (*Johnson* v. *State of California* (1968) 69 Cal.2d 787 [73 Cal.Rptr. 240, 447 P.2d 352]; *Tarasoff, supra,* at pp. 444.) Thus we conclude that plaintiff is entitled to prove that the failure to warn, to trim the foliage, or to take other reasonable measures to protect her was the proximate cause of her injuries.

Plaintiff's first cause of action alleges facts which are sufficient to establish a common law duty of care but which are inadequate to state a cause of action against a public entity. (See § 815.) Plaintiff's second cause of action, by incorporating by reference the allegations in the first cause of action and by pleading the elements of section 835, states a cause of action against defendants. Thus the judgment of dismissal was entered erroneously. The judgment is reversed.

Mosk, J., Kaus, J., Reynoso, J., Grodin, J., and Smith (P. A.), J.,* concurred.

Bird, C. J., concurred in the judgment.

---

*Assigned by the Chairperson of the Judicial Council.