Filed 8/5/16  Overwise v. Vons Companies CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| JESSICA M. OVERWISE, | B265116 |
| Plaintiff and Appellant, | (Los Angeles County<br> Super. Ct. No. BC520455) |
| v. | |
| VONS COMPANIES, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Law Offices of Julia Sklar and Julia Sklar for Plaintiff and Appellant.

Robinson Di Lando, Michael A. Di Lando and Mark Kane for Defendant and Respondent The Vons Companies, Inc.

Lynberg & Watkins, Michael J. Larin and Christopher P. Bates for Defendant and Respondent John M. Frank Construction, Inc.

Plaintiff Jessica M. Overwise appeals from a summary judgment in favor of defendants Vons Companies, Inc. (Vons) and John M. Frank Construction, Inc. (Frank) in her premises liability lawsuit. Overwise was injured when she twisted her ankle and fell while walking on a bright yellow warning strip on the sidewalk in front of a Vons supermarket. She alleged that the placement of the warning strip close to the edge of the sidewalk created an unsafe condition because it failed to properly indicate the presence of a change in elevation between the sidewalk and the adjoining roadway. The trial court granted defendants' motions for summary judgment, finding as a matter of law that the condition that caused the accident – the change in elevation – was not dangerous, but even if it was, the condition was open and obvious. Overwise contends the trial court's finding was contrary to the evidence presented, ignored the opinion of her expert witness, and ignored Vons' alleged violation of the California Building Code. Having reviewed the evidence, including color photographs of the area in question, we reach the same conclusion as the trial court. Accordingly, we affirm the judgment.

## BACKGROUND

The facts relevant to this lawsuit are largely undisputed. The accident at issue occurred at a Vons supermarket located in Pacific Palisades. The entrance to the store is on the west side of the building. There is a seven-foot, nine-inch wide concrete sidewalk, running south to north, in front of the store; the sidewalk abuts an asphalt roadway and parking lot. Along the western edge of the sidewalk, where the sidewalk abuts the roadway, there is a three-foot wide yellow strip of "truncated domes" (a patterned mat that is required by the California Building Code to provide a detectable warning to the visually impaired of the boundary between the sidewalk and the roadway). The sidewalk is level with the roadway directly in front of the entrance to the store, but the roadway gradually slopes down

to the south and north, creating a curb along the sidewalk. The warning strip extends south along the gradually increasing curb until the curb reaches its full height of approximately six and a half inches, and extends north until the curb reaches a height of approximately three inches. The curb is painted red, although the warning strip covers most of the top of the curb.

At around 4:00 or 4:30 in the afternoon on November 20, 2012, Overwise and her roommate exited the store with their groceries and walked south three or four car lengths to their car. After unloading the groceries into the car, Overwise took their shopping cart to the shopping cart corral near the front entrance of the store. As she was walking back toward her car on the warning strip, she stepped on the edge of the curb (which was about an inch and a half high at that point), twisting her ankle and causing her to fall forward. She suffered a broken wrist and bruising all over her body.

Overwise filed the instant lawsuit against Vons, alleging a single cause of action for premises liability-negligence, and later amended the complaint to add Frank, which was the contractor responsible for constructing the sidewalk, as a defendant.[1] Frank moved for summary judgment against Overwise on the ground that her claim alleged a design defect, rather than a construction defect; Frank argued that it constructed the sidewalk in accordance with the design plans and specifications, and it could not be held liable because its work was completed and accepted by Vons before the accident occurred. Vons moved for summary judgment on the ground that the warning strip where Overwise fell was not a dangerous condition as a matter of law, and even if it could be construed as a defect, it was open and obvious, or it was a trivial defect.

---

[1] Vons filed a cross-complaint for indemnity and other claims against Frank and the manufacturer of the warning strip, Safety Step TD, Inc. (Safety Step), and Safety Step filed a cross-complaint against Vons. Neither of those cross-complaints is at issue in this appeal.

In support of its motion, Vons submitted portions of Overwise's deposition testimony in which Overwise testified that, among other things, she had shopped at the store in question once a week for 30 years, including the previous year and a half since the sidewalk and warning strip were installed; she had walked on the warning strip before; and that when someone is walking toward the store from the location of her car, they can see that there is a curb that gradually narrows as it gets closer to the entrance. Vons also submitted a declaration from Dr. Mack A. Quan, a mechanical engineer, who performed a design analysis of the sidewalk and an accident reconstruction analysis, and who concluded that "[t]he interface between the accident sidewalk and the asphalt roadway was clearly demarcated by the change in color and texture between the 3-foot wide, yellow truncated domes and the asphalt roadway," and that the warning strip "was more than adequate to safely demarcate the change in elevation between the concrete sidewalk and adjacent asphalt roadway." Finally, Vons submitted color photographs of the scene of the accident, some of which were taken on the day of the accident and others that were taken by Vons' investigator several months later; the photographs were authenticated by Esmeralda Morales, the Assistant Store Manager of the Vons store where the accident took place, who was present on the day of the accident and who stated that the photographs accurately depict the area as it existed at the time of the accident.

In opposition to Vons' motion, Overwise argued that Vons improperly allowed Frank to install the warning strip on top of the curb, making the curb invisible to customers exiting the store, and that the difference in color between the yellow warning strip and black asphalt did not give notice of an elevation change when viewed from above. The evidence Overwise submitted in support of her opposition included (1) her deposition testimony, in which she testified that she could not see the curb from the store entrance, and assumed the warning strip was

4

at the same level as the asphalt roadway; (2) the same color photographs from the day of the accident that Vons had submitted and three other black and white photographs taken that day; and (3) the declaration of expert witness Jerry Zerg, an architect and forensic consultant.

Zerg, who conducted an inspection of the scene of the accident several months after it occurred, stated that the warning strip extended to the south until the curb reached its full height, but extended to the north only to the point where the curb began.[2] He observed: "Even though the truncated dome strips are yellow and the asphalt surface of the parking lot is black, there could have been a red line between the two surfaces at the time of the incident. The difference in color of the adjoining surfaces and the red line does not give notice of an elevation change between the two surfaces when viewed from above." He stated that Overwise had to choose between walking on the warning strip or walking in the roadway to return to her car because the exposed concrete surface of the sidewalk was covered with merchandise displays that blocked pedestrian travel, and that she chose as the safest path to walk on the warning strip near the line where sidewalk abuts the roadway. He noted that truncated domes are not intended to be used as a pedestrian path – they are intended to give visually impaired pedestrians "a 3 foot tactile notice of danger when crossing over the domes" – and are required by the Building Code to be installed in vehicular areas where walking surfaces are not separated by curbs. He opined that the accident would not have occurred if the warning strip had ended before the curb began, and that having the warning strip

_____

[2] Based upon the photographs of the scene, Zerg's description appears to be incorrect with regard to how far the warning strip extends to the north. The photographs show that the warning strip extended to the north until the curb was approximately three inches high.

5

continue until the curb reached its full height created a foreseeable hazard and an unsafe area for pedestrian travel.

At the hearing on Vons' motion for summary judgment, the trial court announced its tentative ruling was to grant the motion. The court stated that based upon all of the evidence presented, including the photographs, it found that the area where the pedestrian walkway meets the asphalt parking lot is not a dangerous condition. The court also stated that, even if it concluded that the walkway was dangerous because of the rise in the curb, any such danger was open and obvious. The court noted that "[t]he edge of the walkway, the curbside of the walkway and the asphalt were all color coded with three very different stark colors. The pedestrian walkway was yellow texturized with truncated domes. The edge of the walkway and the curbside of the walkway are colored in a very bright red. The asphalt is . . . black in color."

After hearing argument, the court adopted its tentative ruling on Vons' motion, and subsequently entered a minute order stating in relevant part the following: "The Motion for Summary Judgment filed by Defendant The Vons Companies, Inc. as to the Complaint is granted. [¶] The evidence is undisputed that the pedestrian walkway and the area where it met the asphalt of the parking lot was not a dangerous condition. It is an open and obvious condition. See Danieley v. Goldmine Ski Associates, Inc. (1990) 218 Cal.App.3d 111, 121. [¶] The pedestrian walkway (yellow and texturized with truncated domes), the edge of the walkway (red), the curb-side of the walkway (red), and the asphalt (black) were in three colors."

At a later hearing, the court granted Frank's motion "pursuant to the same reasons set forth [in] the granting of the motion for summary judgment filed by Vons Companies." Judgment was entered against Overwise and in favor of Vons and Frank, from which Overwise timely filed a notice of appeal.

6

## DISCUSSION

A.  *Standard of Review*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]  Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

B.  *Premises Liability*

A property owner "'is required to exercise ordinary care to render his premises reasonably safe for use by invitees thereon.  [Citations.]'" (*Markewych v. Altshules* (1967) 255 Cal.App.2d 642, 645-646.)  If a condition on the property presents an unreasonable risk to those who encounter it, it is dangerous, and the property owner is "under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm." (*Bridgman v. Safeway Stores, Inc.* (1960) 53 Cal.2d 443, 446.)  But a property owner is not liable for damages if a dangerous condition is "'"obvious or should have been observed in the exercise of reasonable care."'" [Citations.]" (*Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 27-28.)  That is because "'if the danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty unless harm was foreseeable despite the

7

obvious nature of the danger.'" (*Danieley v. Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 122 (*Danieley*).)

In the present case, as noted, the trial court found as a matter of law that the condition at issue – the change in elevation between the sidewalk with the warning strip and the asphalt – was not dangerous, but even if it was dangerous, the danger was open and obvious. Whether a condition is dangerous, or whether the danger is open and obvious, ordinarily are questions of fact; however, those issues "'may . . . be resolved as a question of law if reasonable minds can come to but one conclusion.'" (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810.)

Overwise argues on appeal that the trial court erred by resolving those issues in this case as a matter of law for three reasons. First, she contends that the trial court's finding that the edge of the sidewalk was painted red, which finding the court relied upon in concluding that the condition was open and obvious, was not supported by any evidence. Second, she contends the court's conclusion that the condition was open and obvious is contradicted by Overwise's testimony that a person coming from the store entrance could not see where the curb begins, and by expert witness Zerg's statement that the difference in color between the yellow warning strip and the black asphalt does not give notice of a change in elevation between the two surfaces when viewed from above. Third, Overwise contends that the warning strip was not a proper warning of a change in elevation because the warning strip was not designed for that purpose and because the Building Code does not allow warning strips to cover curbs. None of these contentions is convincing.

8

1. *The Photographs, and Zerg's Declaration, Support the Trial Court's Finding*

Overwise argues that the trial court's finding that the edge of the sidewalk closest to the roadway was painted red was critical to its conclusion that the change in elevation was open and obvious, but she contends "[t]here is no evidence whatsoever of the existence of the edge pain[t]ed in red on the surface of the walkway." She is mistaken.

Two of the photographs taken by Vons' investigator and attached as part of exhibit B to the declaration of assistant store manager Morales show a view, from above, of the curb area where the accident took place. The photographs show both the face of the curb (i.e., the surface perpendicular to the roadway) and the top of the sidewalk. One can see that the face of the curb is painted red, that the paint on the top edge of the curb (where the curb transitions from vertical to horizontal) appears to have been mostly worn away (it is mostly the color of gray concrete), and that the red paint continues on the top of a portion of the curb for a short distance before the remainder of the curb is covered by the yellow warning strip.

The presence of this relatively thin line of red on top of the curb was noted by Overwise's expert witness, Zerg. Although Overwise argues in her appellant's opening brief that Zerg "did not find any 'painted edge' on top of the curb," and "testified that such red line was necessary but absent," she misconstrues his declaration. Zerg stated: "Even though the truncated dome strips are yellow and the asphalt surface of the parking lot is black, there could have been a red line between the two surfaces at the time of the incident." Overwise apparently interprets Zerg's use of the word "could" to mean that there *should* have been a red line, but there was not such a line. But the next sentence of Zerg's declaration clarifies that, in fact, there *was* a red line, although Zerg concluded that it was insufficient to give notice of the change in elevation: "The difference in color of

9

the adjoining surfaces and the red line does not give notice of an elevation change between the two surfaces when viewed from above."

Thus, contrary to Overwise's assertion, there is unrebutted evidence to support the trial court's finding that there was a line of red painted curb on the top surface of the sidewalk.

2. *Overwise's Testimony and Zerg's Expert Opinion do not Raise a Triable Issue in Light of the Photographic Evidence*

In her deposition testimony, which she submitted in opposition to Vons' summary judgment motion in an attempt to dispute that the condition was open and obvious, Overwise testified that although a person walking *toward* the store entrance could see there was a curb where the accident occurred, "when you're coming out, you do not see where that curb begins. It's impossible." In addition, Overwise's expert witness testified that, based upon his personal examination of the area, the place where the accident occurred was not an open and obvious condition. On appeal, Overwise contends that this evidence precludes a finding as a matter of law that no dangerous condition existed or that the condition was open and obvious. We disagree.

As we observed in *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, a trial court ruling on a summary judgment motion in a premises liability case must independently evaluate the circumstances leading to the accident in determining whether a condition was dangerous. (*Id.* at p. 928, citing *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 705.) And where photographs of the condition in question are submitted in support of the summary judgment, from which the court can conclude that the condition was not dangerous and/or was open and obvious, expert witness testimony to the contrary does not create a triable issue of fact. (*Caloroso, supra*, at p. 928.)

10

Similarly, Overwise's testimony that a person coming out of the store could not see the curb does not create a triable issue of fact. Whether a person at the store's entrance could see the curb is not particularly relevant. What is relevant is whether the change in elevation is reasonably obvious to a person standing or walking on the warning strip. As the court in *Danieley* observed, "because the possessor or operator of a given premises is not an insurer of the safety of invitees onto his premises, he is entitled to assume that any such invitee will perceive that which should be obvious to him in the ordinary use of his senses." (*Danieley*, *supra*, 218 Cal.App.3d at p. 121.) The photographs Vons submitted show that the change in elevation is easily detectable when viewed from a standing position on the warning strip. Overwise did not submit any photographs from a different angle showing that the elevation change could not be seen. Thus, she failed to raise a triable issue of fact precluding summary judgment.

3.      *The Warning Strip is Adequate to Warn of the Potential Hazard*

Finally, Overwise argues that the warning strip cannot be construed as a warning of the change in elevation because warning strips are not meant for that purpose and the installation of the warning strip in this instance violated the Building Code. We disagree.

Overwise is correct that under the California Building Code a warning strip's primary purpose is to warn visually impaired people of a hazard, in this case a roadway. But that does not mean that the warning strip does not also act as a warning, even to non-visually impaired people, of some other hazard. By its very nature, the bright yellow texturized strip calls attention to the area, and thus warns pedestrians to be observant of possible hazards.

Overwise argues, however, that the warning strip in this case is not a proper warning because its placement violated section 1133B.8.5 of the Building Code.

11

That section provides in relevant part: "Detectable warnings at hazardous vehicular areas. If a walk crosses or adjoins a vehicular way, and the walking surfaces are not separated by curbs, railings or other elements between the pedestrian areas and vehicular areas, the boundary between the areas shall be defined by a continuous detectable warning which is 36 inches (914 mm) wide, complying with Section 1121B.3.1, Item 8(a)."[3] Overwise interprets this section to *prohibit* the installation of warning strips where there are curbs. It does no such thing. It simply requires a Code-compliant warning in areas where a pedestrian walkway abuts a roadway and is at the same level as the roadway (like the area directly in front of the entrance to the Vons store here); it does not prohibit the placement of a warning strip at any other location.

In short, the trial court's finding, as a matter of law, that the yellow warning strip, the red line on top of the curb, and the black asphalt made the condition at the scene of the accident open and obvious is fully supported by the evidence. Therefore, the trial court properly granted summary judgment in favor of Vons and Frank.

---

[3]     There is no dispute that warning strips with truncated domes, like the warning strip in this case, comply with the Building Code.

## DISPOSITION

The judgment is affirmed. Vons and Frank shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:



EPSTEIN, P. J.



COLLINS, J.