Filed 5/27/14  Corona v. Dept. of Transportation CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FLORENCIO CORONA, | D065300 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVRS900287) |
| DEPARTMENT OF TRANSPORTATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, David A. Williams, Judge.  Affirmed.

Law Offices of Martin L. Stanley, Martin L. Stanley and Jeffrey R. Lamb for Plaintiff and Appellant.

Ronald W. Beals, Linda Cohen Harrel, Jill Siciliano-Okoye, Alexandar D. DeVorkin, Carol Quan, William H. Rittenburg, Jerald M. Montoya, and Helen Lemmon Alarcon for Defendant and Respondent.

In this action arising from a fatal motor vehicle collision, Florencio Corona, Sr., his wife and daughter (collectively, plaintiffs), sued the State of California Department of

Transportation (the State) generally alleging a dangerous condition of public property (confusing traffic signals) was a substantial factor causing the accident that killed Corona's ex-wife, Jennifer Corona, and 14-year-old son, Florencio Corona, Jr.  The trial court granted summary judgment in the State's favor.  Corona appeals, contending (1) the trial court abused its discretion in sustaining the State's objections to his evidence, (2) he presented evidence raising a triable issue of fact as to whether the State created a dangerous condition, and (3) statutory design immunity did not apply.  We conclude the trial court did not abuse its discretion in ruling on the State's evidentiary objections and Corona did not meet his burden of establishing a triable issue of material fact as to whether the State created a dangerous condition.  Accordingly, we affirm and need not consider the issue of design immunity.

FACTUAL AND PROCEDURAL BACKGROUND

On a morning in January 2008, Jennifer drove westbound on G Street at its intersection with Euclid Avenue (State Route 83), in Ontario, California.  She entered the intersection against a red light and was struck by a vehicle traveling northbound on Euclid Avenue.  Jennifer and her passenger, Florencio Corona, Jr., suffered fatal injuries.

According to the traffic collision report, the weather was clear and the roadway was dry with no unusual conditions.  A witness saw the traffic signal on the west side of the street turn green while the light for Jennifer's position remained red.  The signal on the west side of the street "is slightly canted towards a southeastern direction," "is used to signal the traffic turning from northbound Euclid Ave[nue] to west bound G Street" and

2

could be seen by Jennifer. Jennifer accelerated and ran her red light. The witness assumed Jennifer thought she had a green light.

Plaintiffs sued the State, the City of Ontario, and the County of San Bernardino for the wrongful deaths of Jennifer and Florencio Corona, Jr. The State moved for summary judgment, contending plaintiffs lacked standing to bring a wrongful death lawsuit for the death of Jennifer; Corona's daughter and current wife (Florencio Corona, Jr.'s half sister and stepmother, respectively) lacked standing to bring a wrongful death lawsuit for the death of Florencio Corona, Jr.; plaintiffs could not establish the existence of a dangerous condition; and plaintiffs' action against the State was barred by statutory design immunity afforded by Government Code section 830.6. (Undesignated statutory references are to this code.)

According to the State's undisputed evidence, the traffic signal system in place on the date of the accident for the intersection of G Street and Euclid Avenue was installed in October 1994. Between 1999 and 2008, more than 12 million vehicles entered the intersection traveling westbound on G Street. During that time, there were no accidents involving westbound signal-related driver confusion.

The State also presented evidence explaining the traffic signal location, visibility and timing plan at the subject intersection. According to Matthew Manjarrez, a registered traffic engineer, the signal system conformed to the standards and specifications set forth in California's Manual on Uniform Traffic Control Devices. Manjarrez explained that for westbound vehicles on G Street, there are three traffic signal heads with red, yellow and green circular indications which control traffic that is

3

approaching, stopped at, or entering the subject intersection. Once vehicles enter the intersection, they are controlled by two other traffic signal heads (overlap signals). As part of the traffic signal timing plan, the overlap signals periodically show a green indication while the signals for stopped, approaching, and entering westbound traffic indicate red. This allows for vehicles already within the intersection to clear after the other signals have turned red.

The signal faces on the overlap signal heads are partially visible to drivers stopped at the intersection; however, they are shielded to the extent possible by signal louvers which are devices mounted inside a signal visor to limit visibility of a signal indication to a certain distance from the stop line. As a result of the louvers, the overlap signal indications are partially occluded to drivers stopped at the intersection and their attention is directed to the other signals which are intended for their use.

In opposition to the State's motion, Corona submitted the declaration of Robert W. Crommelin, a professional traffic operations engineer. Crommelin explained that the intersection of G Street and Euclid Avenue has a significant width in an east-west direction across Euclid Avenue. Thus, "[t]he traffic signal phasing is unusual in that there is a split of the phase regarding east and west traffic to minimize stopping vehicles on G Street in the median of Euclid Avenue. The signals have been designed so that traffic will not enter the intersection on G Street unless it can clear the other direction of travel as it crosses the unusually wide intersection." According to Crommelin, the special phasing did not utilize signal heads which could be programmed so drivers did not see conflicting signals. Crommelin attached a picture to his declaration depicting "the

4

situation which can exist where a red signal is being given to the near location, yet at the far location, a green signal is given." Crommelin opined that conflicting traffic signals caused the subject accident and that the picture revealed an unsafe and dangerous condition. He stated that if the traffic signals were properly installed and inspected, the accident would not likely have occurred. Based on the eyewitness statement in the police report and Crommelin's declaration, it appears Corona's theory of the case was that Jennifer entered the intersection against a red light due to confusing traffic signals.

The State objected to the photograph, contending it was misleading because it was taken at a severe angle and did not represent the driver's view on westbound G Street. Further, the photograph did not depict the signals involved in the accident as Crommelin stated the photograph showed a green signal at the northeast corner of the intersection whereas he understood the signal that caused Jennifer's error was at the southwest corner. Lastly, the State argued there was no foundation to establish when and who took the photograph and its viewpoint and direction. The State also objected to significant portions of Crommelin's declaration, including statements based on the photograph and his opinions regarding the cause of the accident.

At the hearing on the summary judgment motion and evidentiary objections, the trial court stated that it was sustaining the State's objections to the photograph and Crommelin's statements which relied on that photograph. The trial court overruled the State's objections concerning Crommelin's statements about what caused the accident and whether there were conflicting traffic signals at the subject intersection. However, the

5

court took the matter under submission and ultimately sustained the objections pertaining to Crommelin's opinions on the cause of the accident.

The court granted the State summary judgment against Corona, finding the State had design immunity and Corona failed to establish the State had notice of a dangerous condition. The court also granted the summary judgment against all plaintiffs as to the claim for the wrongful death of Jennifer and against Corona's daughter and wife as to the claim for the wrongful death of Florencio Corona, Jr. based on lack of standing.

DISCUSSION

I. *Scope of Appeal*

The notice of appeal in this case identifies Corona as the sole appellant; however, his brief indicates that his current wife is also an appellant. There is no other indication that Corona's wife or daughter is an appellant in this action.

Further, Corona's appellate brief does not raise any issues concerning the court's rulings that plaintiffs lacked standing to bring a claim for the wrongful death of Jennifer and that Corona's daughter and wife lacked standing with respect to their claim for the wrongful death of Florencio Corona, Jr. "Issues do not have a life of their own: if they are not raised . . . , we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

Based on the foregoing, any issues concerning plaintiffs' claim for the wrongful death of Jennifer are waived. Similarly, Corona's daughter and wife waived their right to appeal the court's judgment as to their claim for the wrongful death of Florencio Corona,

6

Jr.  Accordingly, we limit our review to the summary judgment against Corona on his wrongful death claim concerning Florencio Corona, Jr.

## II.  *Evidentiary Objections*

Corona argues the trial court abused its discretion in sustaining the State's objections to portions of Crommelin's declaration.  Specifically, he contends that after the trial court took the matter under submission, it improperly reversed the decision it had orally announced at the hearing as the court did not provide its rationale for sustaining each objection and he was deprived an opportunity to be heard.

"'[A] judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some circumstances.'  [Citation.]  Similarly, a trial court's tentative ruling is not binding on the court; the court's final order supersedes the tentative ruling.  [Citations.] . . . Nor is an oral [or tentative] ruling necessarily the unequivocal decision of the court.  A court may change its ruling until such time as the ruling is reduced to writing and becomes the [final] order of the court."  (*Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 300 (*Silverado*).)

Here, the court initially stated that it was sustaining the State's objections to the photograph and Crommelin's statements which relied on that photograph but overruling objections to his statements concerning the cause of the accident and existence of conflicting traffic signals.  After it took the matter under submission, the court issued a written order which reversed its tentative decision concerning the State's objections to

Crommelin's statements about the cause of the accident and existence of conflicting traffic signals. Accordingly, the trial court sustained seven of the State's eight objections.

Based on our review of the record, the court held an extensive hearing on the matter, giving each party ample opportunity to submit arguments. After hearing from the parties, the court stated that "[the decision] was really close when [it] gave [its] tentative" and it would take the matter under submission. Whatever the court's initial impressions may have been, it was not bound by its tentative ruling. (*Silverado*, *supra*, 197 Cal.App.4th at p. 300.) Further, the court did not deprive Corona an opportunity to be heard on the evidentiary matters as it held an extensive hearing in which it invited arguments from the parties.

On appeal, Corona does not make substantive arguments regarding the trial court's evidentiary rulings. He merely makes a blanket statement that he "disputes that any of the objections set forth by [the State] in the underlying case were sustainable, and this Court should consider all of the substantial evidence presented by [him] in revisiting the motion for summary judgment." "Where a point is merely asserted by [appellant] without any [substantive] argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion." (*People v. Ham* (1970) 7 Cal.App.3d 768, 783.)

### III. *Dangerous Condition*

Corona contends he presented evidence raising a triable issue of fact as to whether the State created a dangerous condition. We disagree.

8

A. Standard of Review and General Legal Principles

A trial court must grant a motion for summary judgment if the moving party establishes there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) On appeal from an order granting summary judgment, we independently determine whether triable issues of material fact exist. In making this determination, we view the evidence in a light favorable to the plaintiff. We liberally construe the plaintiff's evidentiary submission, strictly scrutinize the defendant's evidentiary submission, and resolve any evidentiary doubts or ambiguities in the plaintiff's favor. (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 768-769; *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 565.)

A public entity is not liable for an injury except as provided by statute. (§ 815, subd. (a).) Section 835 provides the sole statutory basis for a dangerous condition of public property claim. (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829; *Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 438 (*Brenner*).) The essential elements of a claim under section 835 are (1) the public entity's property was in a dangerous condition at the time of the injury, (2) the injury was proximately caused by the dangerous condition, (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury that occurred, and (4) the dangerous condition was created by the negligent or wrongful conduct of an employee of the public entity acting within the scope of employment, or the public entity had sufficient advance notice of the dangerous condition to protect against it. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1126, 1129-1130; *Brenner*, *supra*, at p. 439.)

9

" 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (§ 830, subd. (a).)  If a party shows the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not "dangerous" within the meaning of the statute.  (*Brenner*, *supra*, 113 Cal.App.4th at p. 439.)

Whether a given set of facts and circumstances creates a dangerous condition is usually a question of fact and may be resolved as a question of law only if reasonable minds can come to but one conclusion.  (§ 830.2; *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810 (*Peterson*); *Chowdhury v. City of Los Angeles (*1995) 38 Cal.App.4th 1187, 1194.)  "Section 830.2 . . . sets forth the criteria for a court to conclude as a matter of law that a condition is not dangerous within the meaning of section 830: 'A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.'"  (*Peterson*, *supra*, at p. 810, fn. 9.)  It is for the court to determine whether, as a matter of law, no reasonable person could

conclude a given defect or set of circumstances is dangerous. (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704.)

B.  Analysis

Corona does not expressly challenge the State's threshold summary judgment showing on the issue of existence of a dangerous condition at the subject intersection. Rather, he contends only that his evidence raised a triable issue of fact regarding whether a dangerous condition existed.

In this case, the State presented evidence to meet its threshold burden to show the traffic signals at the subject intersection did not constitute a dangerous condition within the meaning of section 830.  Manjarrez's declaration established that westbound vehicles on G Street approaching the intersection were "given a clear and unmistakable identification of their right-of-way assignment by the three . . . traffic signal heads." Further, the signal heads on the overlap signals were shielded, to the extent practical, by louvers, which thereby directed the attention of drivers stopped at the intersection to the appropriate signal heads.  The State regularly performed maintenance inspections on the signals.  According to Manjarrez, "[n]othing at the subject intersection would prevent due care drivers from safely traveling through the intersection."

Moreover, the State's records indicate no prior similar accidents occurred at the subject intersection.  The absence of prior similar accidents supports a conclusion no dangerous condition exists.  (See *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 243; *Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 483; *McKray v.*

11

*State of California* (1977) 74 Cal.App.3d 59, 62; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 733.)

Based on the foregoing, we turn to the question of whether Corona met his responding summary judgment burden. On the issue of whether there was a dangerous condition, Corona relied on Crommelin's declaration. As we previously noted, the trial court sustained objections to significant portions of that declaration and Corona did not show an abuse of discretion on appeal (*ante*, part II). "[F]or purposes of reviewing a motion for summary judgment, we do not consider evidence 'to which objections have been made and sustained.'" (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139-140.)

Considering the admitted portions of Crommelin's declaration, we conclude Corona did not meet his burden on summary judgment "to show that a triable issue of one or more material facts exists as to [his] cause of action or a defense thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) Specifically, Corona did not show a negligent or wrongful act or omission of a State employee created the dangerous condition or that the State had actual or constructive notice of the dangerous condition. (§ 835.) Although Crommelin indicates that the signal phasing at the subject intersection "does not utilize signal heads which can be programmed so drivers can see a given signal but not make it possible to see a conflicting signal," he does not address the State's evidence that the signal faces were shielded, to the extent practical, by signal louvers which partially occluded the overlap signal indications to drivers stopped at the intersection. Further, Crommelin's declaration does not establish a negligent or wrongful

12

act by a State employee created a dangerous condition with a risk of significant injury if not used with due care in connection with the relevant signals.

Crommelin's declaration also does not show that the State had actual or constructive notice of the alleged dangerous condition. Crommelin acknowledges the lack of "a significant crash history at th[e] intersection," yet he fails to address any other means by which the State had notice of a dangerous condition. Thus, Crommelin's declaration fails to create a triable issue on this point.

Based on the foregoing, we conclude Corona did not meet his burden of establishing triable issues of material fact on the existence of a dangerous condition.

DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.

13