Filed 7/29/16  Naghash v. Board of Trustees CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ASHLEY M. NAGHASH, | C075207 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201100113923CUPOGDS) |
| v. | |
| BOARD OF TRUSTEES et al., | |
| Defendants and Respondents. | |

Plaintiff, a student at defendant California State University, Sacramento (CSUS), was allegedly raped by defendant Terry Richards, also a CSUS student, in a CSUS dormitory.  Plaintiff commenced this action to recover damages against, among others, CSUS, the Board of Trustees of the California State University, the State of California, the California State University, Alexander Gonzalez, then president of CSUS, and Michael Speros (collectively, the University defendants).

Plaintiff appeals from a judgment of dismissal entered by the trial court upon sustaining the University defendants' demurrer to the second amended complaint without leave to amend.  Plaintiff asserts, among other things, that the trial court erred in

1

concluding that her second amended complaint failed to state a cause of action in tort and in contract insofar as asserted against the University defendants. We conclude that the trial court correctly determined that none of the causes of action asserted against the University defendants in the second amended complaint state a cause of action. We further conclude that there is no reasonable possibility plaintiff could cure the defects by further amendment.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Factual Allegations in the Complaint

Plaintiff was a student attending CSUS. In or about August 2010, she entered into a residency agreement with CSUS to live in the Draper Hall residence hall. However, on or about November 22, 2010, plaintiff, by her attorney, sent a notice of termination of the residency agreement. Plaintiff stated that, since she entered into the residency agreement, there had been approximately five instances of sexual assault and rape in and around the CSUS residence halls. By letter dated December 6, 2010, Speros, "director of Housing and Residential Life at CSU[S]," rejected plaintiff's notice of termination.

Days later, at approximately 10:30 p.m. on December 9, 2010, plaintiff went to the dormitory room of defendant Ariel Campbell in American River Hall, and brought with her a bottle of vodka. Campbell had several bottles of alcohol in her dorm room. Plaintiff and Campbell began drinking alcoholic beverages. Campbell contacted defendant Menard[1] and asked him to bring lime to Campbell's room, which he did. Menard began drinking with plaintiff and Campbell. Defendant Win Chen subsequently arrived at Campbell's room. Menard and Chen invited plaintiff and Campbell to go to their residence in American River Hall, which they shared with Richards, for drinks and

---

[1] Plaintiff uses only the name "Menard" in referring to this defendant.

2

dinner. Although plaintiff did not know Menard, Chen, or Richards, she and Campbell agreed.

Upon arriving at the residence where Menard, Chen, and Richards resided as roommates, Menard began giving shots to plaintiff and Campbell. As the evening continued, Richards began pouring additional drinks for plaintiff, insisting that she drink them. Richards continued providing drinks to plaintiff, even as she insisted that she did not want any more. Plaintiff became highly intoxicated and unable to walk.

In the early morning hours of December 10, 2010, Campbell and Menard went into Menard's room, and Chen went into his room. At this time, according to plaintiff, Richards grabbed her around the waist, walked her into his room, and began taking off her clothes despite her protests. Richards then sexually assaulted and raped plaintiff. After some time, Campbell came to Richards's room, knocked on the door, and escorted plaintiff back to Campbell's room.

At approximately 10:30 a.m., plaintiff returned to her room in Draper Hall. On the same day, she called campus security and filed a formal complaint. However, plaintiff claimed that "Sac State's security"[2] delayed taking her to the hospital for a sexual assault examination until the morning of December 11, 2010. Additionally, according to plaintiff, Richards was notified of the complaint against him, and he fled to his mother's home in San Francisco. Thereafter, Sac State's security conducted a phone interview with Richards, during which he was coached by his mother. Also according to plaintiff, Sac State's security contaminated the scene of the assault in conducting its investigation. Plaintiff claimed that, "[d]ue to [CSUS]'s failure to effectively process the evidence at

---

[2] We understand plaintiff's references to "Sac State's security" in her complaint to mean the Sacramento State Police Department (<http://www.csus.edu/aba/police/index.html> [as of July 29, 2016]). (See Ed. Code, § 89560.) Nevertheless, we shall use the term plaintiff used in her complaint.

the crime scene and refrain from contaminating evidence and refusal to conduct an effective and unbiased interview with witnesses, the Sacramento County District Attorney's Office refused to prosecute Defendants for their criminal acts."

## The 11 Causes of Action

Plaintiff commenced this action by complaint filed November 14, 2011, asserting 11 causes of action. She claimed that, as a result of Richards's sexual assault, enabled by the other defendants, she sustained bodily injuries and mental anguish.

In the first cause of action, to recover damages for breach of contract, breach of the implied warranty of habitability, and breach of the implied warranty of good faith and fair dealing, plaintiff asserted that CSUS breached its contract with her by, among other things, failing to provide safe and secure housing, failing to prevent underage drinking on campus, and failing to enforce its own policies and procedures.

In the second cause of action, to recover damages for sexual assault and battery, plaintiff asserted that CSUS willfully "facilitated, assisted, and encouraged [d]efendants to sexually assault and rape" her by refusing to enforce its own policies and procedures, failing to provide adequate security, and taking action which prevented the prosecution of criminal activities. Plaintiff maintained that CSUS deliberately and willfully conducted investigations of criminal complaints in such a manner as to conceal evidence of crime so as to reduce crime statistics and maintain its reputation within the community. She further claimed that, since August 2010, there had been no fewer than seven sexual assaults and rapes on the CSUS campus. However, during that time, no individual had been charged or prosecuted.

In the third cause of action, to recover damages for willful creation of a dangerous premises condition, premises liability, and negligence, plaintiff asserted that CSUS breached its duties to her to provide safe and secure housing and to prevent Richards from sexually assaulting and raping her.

4

The fourth cause of action, to recover damages for negligence and willful refusal and failure to enforce policies and procedures, essentially duplicated the factual allegations set forth in prior causes of action.

In the fifth cause of action, plaintiff sought damages for intentional infliction of emotional distress. Plaintiff reiterated her factual allegations, and asserted that defendants' conduct was intentional and outrageous, and that defendants acted with the intent to harm her or with reckless disregard for her safety and well-being.

In the sixth cause of action, to recover damages for intentional misrepresentation and concealment, plaintiff alleged that CSUS intentionally misrepresented the safety of its facilities and concealed the fact that major crimes had occurred on campus. Plaintiff claimed that her reliance on defendants' misrepresentations was reasonable.

In the seventh cause of action, to recover damages for negligence and willful refusal to provide adequate security, plaintiff alleged that CSUS had actual and constructive notice that its security was inadequate, and that underage drinking was occurring on campus despite its policies against such conduct. Plaintiff further alleged that defendants acted with the intent to harm her or with reckless disregard for her safety.

In the eighth cause of action, to recover damages for negligence and facilitating and encouraging sexual assault and rape, plaintiff alleged that CSUS facilitated, assisted, and encouraged Richards to rape her by willfully refusing to enforce its own policies and procedures, including encouraging underage drinking, and by failing to conduct a competent investigation. Plaintiff again alleged that defendants acted willfully, or with reckless disregard for her safety. She further alleged that defendants' conduct was outrageous, and that CSUS had actual and constructive knowledge of the inadequacy of its security.

In the ninth (negligence, negligence per se, res ipsa loquitur), tenth (negligence and willful refusal to properly investigate and prosecute), and eleventh (negligence and

5

willful refusal to provide secure housing) causes of action, plaintiff largely duplicated her prior factual allegations.

## The University Defendants' Demurrer

The University defendants demurred to the plaintiff's complaint. The University defendants asserted that the complaint failed to allege a legal duty they owed to plaintiff; that the complaint failed to identify a statutory basis for public entity liability; that the complaint failed to allege a viable claim for injury caused by a dangerous condition on public property; that, pursuant to Government Code section 845,[3] they were immune from liability for failure to provide police protection services; that they were not vicariously liable for the wrongdoing of students; that the complaint failed to state a viable claim for breach of contract; and that, pursuant to Business and Professions Code section 25602, they were immune from liability grounded on allegations of their failure to prevent underage drinking on campus.

In their memorandum of points and authorities, the University defendants asserted that well established case law provided that university officials do not guarantee the safety of students, and do not owe a general duty to protect students from the criminal wrongdoing of third parties. The University defendants noted that plaintiff did not allege that they had any specific information suggesting that she was the target of any particularized threat of harm. They also observed that plaintiff did not allege a physical defect on public property, or that they breached a mandatory statutory duty. The University defendants asserted that, because they owed plaintiff no general duty to protect, all claims based upon the existence of such a duty were fatally defective.

With regard to the duty to warn, the University defendants argued that, generally, a defendant will only have a duty to warn, or control the conduct of a third party, where

---

[3] Undesignated statutory references are to the Government Code in effect at the time of the proceedings.

6

there is a special relationship between the defendant and the plaintiff, or between the defendant and the third party. The University defendants noted that plaintiff alleged neither that they had information about a particular potential assailant which they should have disclosed to her, nor that they had knowledge of a specific threat by her assailant against her. The University defendants asserted that plaintiff's causes of action insofar as asserted against them were barred under case law providing that neither a university nor its employees may be vicariously liable for the torts of its students.

As for plaintiff's breach of contract cause of action, the University defendants asserted that case law rejected the premise that a college dormitory license agreement created the type of dependent relationship which could support liability against them for the acts of third parties. The University defendants further asserted that, inasmuch as the gravamen of plaintiff's allegations sounded in tort, she could not avoid the consequences of the Government Claims Act and its immunity provisions by pleading her claims as a breach of contract. The University defendants further asserted that the complaint failed to satisfy the specificity requirement for a breach of contract cause of action. In this regard, the University defendants noted that the complaint failed to set forth the particular terms of the contract, and plaintiff failed to attach and incorporate by reference a copy thereof.

Finally, as for plaintiff's allegation that the University defendants permitted consumption of alcohol on campus by underage students, citing Business and Professions Code section 25602, subdivision (b), they asserted they could not be liable to plaintiff for the injuries visited upon her by third parties.

**Plaintiff's Opposition to the Demurrer**

Plaintiff asserted that, contrary to the University defendants' contentions, they owed her a duty of care. Plaintiff relied on the duty a public entity may owe to members of the public to maintain premises in a safe condition and to maintain premises in a condition that will not give rise to a foreseeable risk that criminal activity will harm

7

others. Plaintiff also asserted that she stated causes of action for vicarious liability based on the wrongful acts of Speros and Gonzalez, who, at all relevant times, were acting within the scope of their employment.

Plaintiff asserted specifically that the University defendants owed her a duty to: (1) warn her "that they have given sanctuary to sexual predators on campus"; (2) provide safe housing; (3) allow her to terminate her residency agreement; (4) provide alternative accommodations; (5) take reasonable steps to maintain and supervise residence halls so as to prevent criminal acts of third parties; (6) prevent underage drinking on campus; and (7) refrain from selling alcohol on campus. Plaintiff claimed that the University defendants breached these duties to her. She further asserted that they knew or should have known of the particular risk of harm posed, and that their relationship to her as a CSUS student gave rise to a duty of care. She asserted that children of a certain age cannot be expected to exercise the discretion and judgment associated with full maturity. Plaintiff also asserted that she successfully pleaded with the requisite particularity every fact necessary to demonstrate governmental liability, including the existence of a statutory duty. Plaintiff further claimed that she had alleged a viable claim for injuries caused by a dangerous condition on public property pursuant to section 835.

Plaintiff asserted that, unlike the cases on which the University defendants relied, here, the University defendants placed plaintiff in a position of danger which contributed to the harm she suffered. Plaintiff further asserted that the University defendants should reasonably have anticipated that she would rely on them to protect her against that harm. She claimed that the University defendants' actions constituted willful and deliberate malfeasance.

Plaintiff asserted that section 845, which provides that public entities and employees will not be liable for failure to establish a police department or provide sufficient police protection, did not shield the University defendants from liability. Plaintiff claimed that she had not alleged failure to provide police protection or failure to

8

provide sufficient police protection. Rather, the gravamen of her complaint was that the University defendants furnished sanctuary to sexual predators and encouraged underage drinking "to promote [and] facilitate a party atmosphere for these sexual predators to prowl around the campus and rape female students on campus," and that the University defendants breached their contractual obligations to her under the residency agreement.

Finally, plaintiff asserted that, under Business and Professions Code section 25602.1, the University defendants could be subject to liability for furnishing alcohol on campus.

**The University Defendants' Reply**

In reply, the University defendants asserted that plaintiff failed to allege that they were in possession of any information which would trigger a duty owed to plaintiff. They asserted that, where the avoidance of harm requires a defendant to control the conduct of a third party, or to warn of such conduct, liability may be imposed only if the defendant has a special relationship with that third party or with the potential victim. Here, according to the University defendants, plaintiff failed to allege facts supporting a duty owed to warn plaintiff, or that they had a special relationship with a dangerous third party.

The University defendants asserted that the law treats college students as adults, and does not impose a duty of supervision on college officials. According to the University defendants, well established case law rejected the precise sort of claims asserted by plaintiff here.

With regard to plaintiff's claim of a dangerous condition on property, the University defendants emphasized that plaintiff did not allege any physical defect related to her alleged injuries.

### The Trial Court's Ruling on the First Demurrer

The trial court sustained the University defendants' demurrer with leave to amend on all causes of action pertaining to those defendants.[4] The court noted, among other things, that plaintiff failed to set forth the specific statutes pursuant to which she asserted her tort claims as required under section 815. The court found the allegations of the complaint strikingly similar to those in *Tanja H. v. Regents of University of California* (1991) 228 Cal.App.3d 434 (*Tanja H.*), the case on which the University defendants relied for the principle that a university is generally not liable for the consequences resulting from the combination of college students and alcohol.

The court concluded that plaintiff failed to allege facts sufficient to support a breach of contract cause of action. The court noted that the complaint did not allege the specific terms of the contract, and did not allege facts demonstrating a breach of those terms. According to the court, plaintiff failed to allege facts supporting the claim that the University defendants did not provide her with safe and secure housing.

### Amended Complaints and Successive Demurrers

Thereafter, plaintiff filed a first amended complaint. The University defendants again demurred, and the trial court sustained the demurrer with leave to amend all but one cause of action. Plaintiff filed a second amended complaint, amplifying her factual allegations. The trial court again sustained the University defendants' demurrer, with leave to amend only as to the breach of contract cause of action.

### Judgment

Thereafter, the trial court granted, as unopposed, the University defendants' motion to dismiss the complaint due to plaintiff's failure to timely file and serve a third

---

[4] The court's ruling did not involve the second cause of action, which asserted a claim sounding in sexual assault and battery and was not asserted against the University defendants.

10

amended complaint.  In a judgment dated September 25, 2013, the trial court ordered that judgment of dismissal be entered in favor of the University defendants.

## DISCUSSION

### I.  Generally Applicable Principles

#### A.  Standards of Review

"In reviewing a demurrer order, we independently evaluate the challenged pleading, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context.  [Citation.]  We treat the demurrer as admitting all material facts properly pleaded, but we do not assume the truth of contentions, deductions or conclusions of law.  [Citation.]  We determine de novo whether the factual allegations of the challenged pleading are adequate to state a cause of action under any legal theory."  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 51 (*Allen*).)

The plaintiff bears the burden of demonstrating that the demurrer was sustained erroneously.  (*Allen, supra*, 234 Cal.App.4th at p. 52.)  We will affirm the judgment if proper on any grounds stated in the demurrer, whether or not the trial court acted on that ground.  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

It is the responsibility of the appellant to support claims of error with meaningful argument and citation to authority.  (*Allen, supra*, 234 Cal.App.4th at p. 52; Cal. Rules of Court, rule 8.204(a)(1)(B).)  "When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration.  [Citations.]  In addition, citing cases without any discussion of their application to the present case results in forfeiture.  [Citations.]  We are not required to examine undeveloped claims or to supply arguments for the litigants."  (*Allen*, at p. 52.)

Where a demurrer to a complaint is sustained with leave to amend and the plaintiff elects not to amend the complaint, the plaintiff may "test the validity of the order sustaining the demurrer by filing an appeal from the ensuing judgment of dismissal."

11

(*Allen, supra*, 234 Cal.App.4th at p. 51.)  If the trial court sustained the demurrer without leave to amend, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  [Citation.]  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  [Citation.]  The plaintiff has the burden of proving that an amendment would cure the defect."  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)

### B.  Public Entity Liability

"Under the California Tort Claims Act (Gov. Code, § 810 et seq.), 'a public entity is not liable for injury arising from an act or omission except as provided by statute.  (Gov. Code, § 815, subd. (a); [citation].)' " (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932 (*Hoff*), fn. omitted.)  "The Legislative Committee Comment to section 815 states:  'This section *abolishes all common law or judicially declared forms of liability for public entities*, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation.' " (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899.)  Moreover, the California Supreme Court's own decisions "confirm that section 815 abolishes common law tort liability for public entities." (*Ibid.*)  "Thus, in California, 'all government tort liability must be based on statute [citation].'  [Citation.]  ' "In the absence of a constitutional requirement, public entities may be held liable only if a statute . . . is found declaring them to be liable." ' " (*Hoff*, at p. 932.)

### II.  First Cause of Action – Breach of Contract, Implied Warranty of Habitability, and Implied Covenant of Good Faith and Fair Dealing

Plaintiff asserts that, contrary to the trial court's determination, the first cause of action in the second amended complaint stated a cause of action to recover damages for breach of contract, breach of the implied warranty of habitability, and breach of the implied covenant of good faith and fair dealing.  Plaintiff asserts that she set forth the

12

relevant terms of the contract, and successfully alleged facts sufficient to withstand the University defendants' demurrer.

We conclude that the trial court properly sustained the University defendants' demurrer as to the breach of contract cause of action as well as her causes of action for breach of the implied warranty of habitability and breach of the warranty of good faith and fair dealing.

## A.  Breach of Contract

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)  To prove breach, the plaintiff is required to prove that the defendant failed to do something the contract required the defendant to do, or the defendant did something that the contract prohibited the defendant from doing.  (See *Gabriel v. Wells Fargo Bank, N.A.* (2010) 188 Cal.App.4th 547, 553, fn. 3; CACI No. 303.)  Section 814 provides that "[n]othing in this part" regarding liability of public entities and public employees "affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." (§ 814.)

In the second amended complaint, plaintiff alleged that she entered into a residency agreement with the University defendants.  According to plaintiff, pursuant to this agreement, the University defendants promised that they would provide " 'a safe, secured, and private . . . housing accommodations for [p]laintiff . . . during the academic semesters . . . .' "  Plaintiff relies on exhibit A to the second amended complaint as setting forth the relevant terms of the agreement between the parties.  This exhibit is not a signed copy of the alleged residency agreement.  In fact, it does not appear to be a copy of that agreement at all.  At the least, it is not a complete copy of that agreement.  Annexing the exhibit to the second amended complaint, plaintiff stated not that she was attaching a copy of the agreement, but instead that the "[t]rue and correct terms and conditions of the

13

Residency Agreement are attached as Exhibit A, and they are incorporated herein by reference." The trial court stated that this method of pleading was "highly irregular," and noted that the University defendants had raised concerns about the authenticity of the exhibit through a motion for sanctions pursuant to Civil Procedure Code section 128.7. Nevertheless, the court stated that, in reviewing the demurrer, it was compelled to accept the provisions alleged by plaintiff as constituting the terms and conditions of the residency agreement relevant to plaintiff's claims.[5] (See generally *Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1561 [ordinarily, a written contract is sufficiently pleaded if it is set out in full or its terms alleged according to their legal effect], disapproved on another ground in *Epic Medical Management, LLC v. Paquette* (2015) 244 Cal.app.4th 504, 516.)

According to plaintiff's second amended complaint, on the night of December 9, 2010, and the early morning hours of December 10, 2010, she was sexually assaulted and raped in the American River Hall dormitory after becoming severely intoxicated while drinking with a number of fellow students in that dormitory. Plaintiff alleged that the University defendants failed to provide " 'a safe, secured, and private . . . housing accommodations for [p]laintiff . . . during the academic semesters," and, as a result, she was raped.

Even accepting the material facts alleged as admitted for purposes of the University defendants' demurrer (*Allen, supra*, 234 Cal.App.4th at p. 51), we conclude that these allegations fail to state a cause of action for breach of contract. The injuries alleged by plaintiff were not the result of the University defendants' breach of a promise made to plaintiff in the residency agreement, but instead resulted from the criminal acts

---

[5] Thus, the trial court overruled the University defendants' demurrer to the extent it asserted that the second amended complaint failed to adequately plead the terms and conditions of the alleged residency agreement.

14

of a third party. Moreover, none of plaintiff's allegations relate to Draper Hall, the housing accommodations the University defendants agreed to provide to plaintiff. Plaintiff alleged that she left Draper Hall, went to a friend's room in a different dormitory, American River Hall, voluntarily drank alcoholic beverages, went to another room in American River Hall where she drank more alcoholic beverages, and then she was sexually assaulted. Plaintiff has not set forth factual allegations that the University defendants breached their alleged contractual obligation to provide her with safe and secure housing in Draper Hall, or any other contractual obligation.

Plaintiff further alleged that the University defendants breached the residency agreement by failing to prevent underage drinking on campus, failing to enforce its policies and procedures, failing to implement new policies and procedures to prevent sexual assaults and rapes on campus, and failing to disclose material facts and crime statistics. However, plaintiff failed to allege any contractual provisions pursuant to which the University defendants agreed to perform these acts. Moreover, even accepting the provisions in exhibit A to plaintiff's second amended complaint as constituting the terms of the residency agreement, no provision obligated the University defendants to perform in this manner. Thus, in this regard too, plaintiff has failed to state a cause of action for breach of contract.

We also note the case law on which the University defendants rely pertaining to the breach of contract cause of action. "The breach of the license agreement by one student imposes no contractual duty upon the Trustees in regard to another student." (*Baldwin v. Zoradi* (1981) 123 Cal.App.3d 275, 294 (*Baldwin*).) Thus, even had plaintiff alleged provisions of the licensing agreement and that those provisions had been breached by her attacker or other students, this would not give rise to a cause of action for breach of contract against the University defendants.

15

## B. Breach of Implied Warranty of Habitability

The elements of a claim to recover damages based on a breach of the implied warranty of habitability are: (1) the existence of a material defective condition affecting the premises' habitability, (2) notice to the landlord of the condition within a reasonable time after the tenant's discovery of the condition, (3) the landlord was given a reasonable time to correct the deficiency, and (4) resulting damages. (*Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1297 (*Erlach*).)

"The implied warranty of habitability recognizes 'the realities of the modern urban landlord-tenant relationship' and imposes upon the landlord the obligation to maintain leased dwellings in a habitable condition throughout the term of the lease." (*Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1204.) "The implied warranty of habitability . . . gives a tenant a reasonable expectation that the landlord has inspected the rental dwelling and corrected any defects disclosed by that inspection that would render the dwelling uninhabitable. The tenant further reasonably can expect that the landlord will maintain the property in a habitable condition by repairing promptly any conditions, of which the landlord has actual or constructive notice, that arise during the tenancy and render the dwelling uninhabitable. A tenant injured by a defect in the premises, therefore, may bring a negligence action if the landlord breached its duty to exercise reasonable care." (*Id.* at pp. 1205-1206, fns. omitted.)

Plaintiff alleged in the second amended complaint only that the University defendants "also breached the warranty of habitability . . . by its breach as alleged herein." Plaintiff's allegation amounted to no more than mere conclusory contentions and conclusions of law. (See generally *Allen, supra*, 234 Cal.App.4th at p. 51.) She did not allege specific facts which would give rise to such a claim. Further, inasmuch as plaintiff could assert a claim based on the implied warranty of habitability pursuant to her residency agreement, such a claim necessarily would have to be asserted in connection with her premises. Here, again, the alleged assault occurred in another dormitory

16

altogether.  Plaintiff has not alleged a material defective condition, or any condition, affecting her premises' habitability.  (See generally *Erlach, supra*, 226 Cal.App.4th at p. 1297.)

Accordingly, we conclude that plaintiff has failed to state a cause of action to recover damages based on the implied warranty of habitability.

### C.  Breach of Covenant of Good Faith and Fair Dealing

" 'The law implies in every contract . . . a covenant of good faith and fair dealing. "The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits." ' [Citation.]  But there is no bad faith when a party does that which is explicitly allowed by an agreement, or declines to renegotiate an agreement." (*Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1203, fn. omitted.)  "The covenant thus cannot ' "be endowed with an existence independent of its contractual underpinnings.' " [Citation.]  It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349-350 (*Guz*).)  Additionally, where the allegations relating to a claimed violation of the implied covenant of good faith and fair dealing "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395 (*Careau*).)

In her second amended complaint, plaintiff alleged only that the University defendants "also breached the . . . implied warranty of good faith and fair dealing by its breach as alleged herein."

As with the warranty of habitability claim, plaintiff's allegation that the University defendants violated the implied covenant of good faith and fair dealing consisted of no

17

more than conclusory assertions and conclusions of law. (See generally *Allen, supra*, 234 Cal.App.4th at p. 51.) Moreover, we disregard as superfluous plaintiff's allegations pursuant to the implied covenant of good faith and fair dealing, as they are premised on the same acts and seek the same damages as plaintiff's breach of contract claim. (*Careau, supra*, 222 Cal.App.3d at p. 1395.) Furthermore, as we have noted, the subject of the residency agreement was plaintiff's tenancy in Draper Hall. Plaintiff's claims relate to acts alleged to have occurred in a different dormitory, in rooms housing other students. "[W]here an implied covenant [of good faith and fair dealing] claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid." (*Guz, supra*, 24 Cal.4th at p. 327.)

### D. Conclusion – First Cause of Action

We conclude that the first cause of action in the second amended complaint failed to state a cause of action to recover damages for breach of contract, breach of the implied warranty of habitability, and breach of the implied covenant of good faith and fair dealing.

### III. The Remaining Causes of Action – Negligence-Based Claims

The third, fourth, seventh, eighth, ninth, tenth, and eleventh causes of action are all grounded in negligence. As for applicable statutory grounds for public entity/public employee liability which could authorize recovery on these causes of action, section 815.2 authorizes actions for injuries inflicted by public employees within the scope of their employment, and section 830 et seq., addresses liability for a dangerous conditions of public property.

We conclude that all negligence-based claims fail to state a cause of action.

### A. Elements of Negligence

The elements of a negligence cause of action are: (1) the existence of a legal duty of care, (2) breach of that duty, and (3) proximate cause resulting in injury. (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.) With regard to the existence of a legal

18

duty of care, the California Supreme Court has stated: "[A] 'defendant owes a duty of care to all persons who are foreseeably endangered by his [or her] conduct, with respect to all risks which make the conduct unreasonably dangerous.' " (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434-435 (*Tarasoff*).) However, in *Tarasoff*, our high court further held that "when the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim." (*Id*. at p. 435.) We now consider several cases which addressed the liability of state colleges and universities to students for harm resulting from the conduct of third parties.

## B. *Baldwin*, *Crow*, and *Tanja H.*

In *Baldwin, supra*, 123 Cal.App.3d 275, the plaintiff student was a passenger in a vehicle engaged in a speed contest. (*Id.* at p. 279.) The driver of the vehicle was a fellow student who had consumed " 'great amounts' " of alcohol. (*Ibid*.) The vehicle collided with one or more other vehicles and overturned, and the plaintiff sustained severe injuries as a result. (*Ibid*.) The plaintiff alleged that the defendants associated with the California Polytechnic State University, San Luis Obispo, "were negligent in several particulars, including a failure to perform a mandatory duty to enforce the provisions of the license agreement [pursuant to which the students lived in the dormitories], and by so doing 'caused to be furnished' alcoholic beverages to persons under the age of 21 years and aided the student defendants to consume alcohol on campus negligently and in contravention of law which was enacted for the protection of the public from injuries and that a duty of care existed because of the landlord-tenant relationship." (*Id.* at pp. 279-280.) In additional causes of action, the plaintiff asserted that the defendants negligently failed to perform their duty to enforce the rules of student conduct; knowingly " 'created an unsafe condition, to wit, a safe haven or enclave where large groups of minors could, would and did gather and consume alcoholic beverages, to an excess, with complete

19

impunity from any laws or rules and regulations' "; and breached the license agreement. (*Id*. at p. 280.)

On appeal after a sustained demurrer, the Court of Appeal for the Fifth Appellate District observed that "[s]chools and their personnel owe a duty to students who are on school grounds to supervise them and to enforce rules and regulations necessary for their protection. Either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care. It is the task of supervisors to anticipate and curb behavior of students who have not attained full maturity." (*Baldwin, supra*, 123 Cal.App.3d at p. 281.) However, citing *Tarasoff*, the *Baldwin* court further observed, "[w]hen the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law as a general rule imposes liability only if the defendant bears some special relationship to the dangerous person or potential victim." (*Baldwin*, at pp. 282-283, citing *Tarasoff, supra*, 17 Cal.3d at p. 435.) The plaintiff in *Baldwin* asserted that she stood in a special relationship with the university and its personnel based on the license agreement by which she and fellow students occupied the dormitories. (*Baldwin*, at p. 284.) That agreement, among other things, prohibited alcoholic beverages in the residence halls and the consumption of alcohol on campus. (*Id.* at p. 285.)

In considering whether it was appropriate to find a duty of care to third persons, the *Baldwin* court considered certain factors, set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*). (*Baldwin, supra*, 123 Cal.App.3d at p. 286.) These factors included " 'the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Ibid*., quoting *Rowland*, at p. 113.)

20

The *Baldwin* court, applying the *Rowland* factors, found that they militated against finding the existence of a duty of care. (*Baldwin, supra*, 123 Cal.App.3d at pp. 286-287.) The court determined that the circumstances alleged by the plaintiff did not support a rule establishing a duty of care on the part of the defendants, stating that, notwithstanding the fact that the plaintiff's injuries were certain and substantial, "there [was] a lack of a close connection between the failure of the Trustees and dormitory advisors to control on-campus drinking and the speed contest." (*Id.* at pp. 286-287.)

In addressing the *Rowland* factor relating to the moral blameworthiness of the defendants, the *Baldwin* court considered the role of colleges and universities relative to their students. The court observed: "the authoritarian role of college administrators is gone. Students have demanded rights which have given them a new status and abrogated the role of *in loco parentis* of college administrators. '[¶] Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students. Whatever may have been its responsibility in an earlier era, the authoritarian role of today's college administrations has been notably diluted in recent decades. Trustees, administrators, and faculties have been required to yield to the expanding rights and privileges of their students.' " (*Baldwin, supra*, 123 Cal.App.3d at p. 287, quoting *Bradshaw v. Rawlings* (3d Cir. 1979) 612 F.2d 135, 138.) The court noted that the use of alcohol by college students, while prevalent, "is not so unusual or heinous by contemporary standards as to require special efforts by college administrators to stamp it out," and that, although the university reserved the right to take disciplinary action against students for on-campus drinking, "this merely follows state law." (*Baldwin*, at p. 288, citing Bus. & Prof. Code, § 25608.) Again quoting *Bradshaw*, the court stated: " 'A college regulation that essentially tracks a state law and prohibits conduct that to students under twenty-one is already prohibited by state law does not, in our view, indicate that the college voluntarily assumed a custodial relationship with its students so as to [impose a duty of protection.]' " (*Baldwin*, at p. 288, quoting *Bradshaw*, at p. 141.)

21

The *Baldwin* court found that the university did not owe a duty of care to the plaintiff. (*Baldwin*, at p. 291.)

Almost 10 years after *Baldwin*, this court decided *Crow v. State of California* (1990) 222 Cal.App.3d 192 (*Crow*). In *Crow*, the plaintiff, a student at CSUS, was assaulted by a fellow student at a keg party in, coincidentally, Draper Hall. (*Id.* at p. 197.) On the plaintiff's appeal from the judgment dismissing his complaint after the trial court awarded the defendants summary judgment, this court affirmed. (*Id.* at p. 196.) First, notwithstanding the plaintiff's efforts to plead causes of action sounding in breach of contract based on the residence agreement, this court opined, without deciding the issue: "Given the relief sought in the complaint, we believe [the plaintiff] actually is suing in tort, using the existence of the contract to provide the necessary duty elements." (*Id.* at p. 198.)

This court in *Crow* considered the potential liability of a defendant for the conduct of third parties grounded on the existence of a special relationship. (*Crow, supra*, 222 Cal.App.3d at pp. 205-206.) In doing so, the *Crow* court discussed *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799 (*Peterson*). In *Peterson*, the California Supreme Court noted the distinction between a school's owing a duty of care to a high school student versus a college student. (*Peterson*, at p. 806, fn. 3.) Our high court stated: "*Dailey* [*v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741 (*Dailey*)] arose in the context of a secondary school where a 16-year-old was killed while engaging in a 'slap boxing match.' We observed that children of that age 'should not be expected to exhibit that degree of discretion, judgment, and concern for the safety of themselves and others which we associate with full maturity.' [Citation.] The present case, by contrast, does not implicate the duty to supervise the activities of students who are too immature to exercise judgment for their personal safety. Rather, the issue here is the

22

extent of the [college]'s duty to provide safe premises."[6] (*Peterson*, at p. 806, fn. 3.) In *Crow*, elaborating on this "distinction between young, immature schoolchildren in grammar and high schools on the one hand and adult students in colleges and universities on the other . . . ," this court looked to *Baldwin* and concluded: "We agree with the assessment of CSUS that it could 'not have prevented this incident from taking place except *possibly* by posting guards in each dorm room on a 24-hour, 365-day per year basis.' " (*Crow*, at p. 209.) The distinction between younger students and students in postsecondary school, the goals of postsecondary education, the burden of imposing the duty advocated by the plaintiff, and the resulting consequences to society all militated against the imposition of a legal duty on CSUS. (*Ibid.*)

Finally, in *Tanja H., supra*, 228 Cal.App.3d 434, the plaintiff was raped by several fellow students in a university dorm room after a party where alcohol was served. (*Id.* at pp. 435-436.) The Court of Appeal, First Appellate District, considered *Baldwin* and *Crow*, and continued the discussion of postsecondary institutions' duty to protect their students. (*Tanja H.*, at p. 438.) The *Tanja H.* court stated: "College students are generally young adults who do not always have a mature understanding of their own limitations or the dangers posed by alcohol and violence. However, the courts have not been willing to require college administrators to reinstitute curfews, bed checks, dormitory searches, hall monitors, chaperons, and the other concomitant measures which would be necessary in order to suppress the use of intoxicants and protect students from each other." (*Ibid.*) The court continued: "[A] university in its residual role as the

---

[6] Plaintiff here relies on *Dailey* for the proposition that younger individuals cannot be expected to exhibit the degree of discretion, judgment, and concern for their safety and that of others which is commonly associated with full maturity. However, as set forth above, these considerations discussed in *Dailey* have been explicitly determined not to apply, or not to apply with nearly the same force, to college and university students as opposed to high school students. (*Peterson, supra*, 36 Cal.3d at p. 806, fn. 3; *Crow, supra*, 222 Cal.App.3d at pp. 208-209.)

operator of a dormitory used as living quarters by students is more akin to an innkeeper, who does not have a duty to search guests for contraband, separate them from each other, or monitor their private social activities. [Citation.] As campuses have, thus, moved away from their former role as semimonastic environments subject to intensive regulation of student lives by college authorities, they have become microcosms of society; and unfortunately, sexually degrading conduct or violence in general -- and violence against women in particular -- are all too common within society at large. College administrators have a moral duty to help educate students in this respect, but they do not have a legal duty to respond in damages for student crimes." (*Ibid.*) The *Tanja H.* court posed the question: "Should a duty be imposed which would make colleges liable for damages caused by third parties, unless colleges impose onerous conditions on the freedom and privacy of resident students -- which restrictions are incompatible with a recognition that students are now generally responsible for their own actions and welfare?" (*Ibid.*) In affirming the judgment of dismissal following the sustaining of the respondents' demurrer, the court concluded: "[T]he courts can establish the criminal and civil liability of the perpetrators of crimes; but the courts with good reason have been unwilling to shift moral and legal responsibility away from student perpetrators and onto the heads of college administrators." (*Id.* at p. 439.)

### C. Duty of Care

Despite plaintiff's insistence that *Baldwin*, *Crow*, and *Tanja H.* are not relevant, we conclude that they are on point as to her negligence claims. Accordingly, we conclude that the University defendants did not owe a duty of care to plaintiff to protect her from the acts of third parties, to control third parties, or to warn her of third parties' conduct. Plaintiff insists that her claim is not that the University defendants owed her such a duty. However, plaintiff does expressly allege, for example, that the University defendants owed her a duty "to prevent . . . Richards from sexually assaulting and raping" her, as well as other similar allegations.

24

Plaintiff claims that the University defendants owed her various other duties, including the duty to provide safe and secure housing, to enforce university policies and procedures, to prevent underage drinking on campus, to implement procedures to prevent sexual assaults and rapes on campus, and to disclose material facts and crime statistics. As in *Crow*, plaintiff's trial court opposition papers and her briefs on appeal are replete with arguments which, at their core, are based on the University defendants' alleged "liability . . . for [their] negligent operation and supervision of the dormitories." (*Crow, supra*, 222 Cal.App.3d at pp. 206-207.) Plaintiff's contentions also bear similarity to the unsuccessful claims in *Baldwin*, wherein the plaintiff asserted that the defendants were negligent for failing to perform their duty to enforce the rules of student conduct and for knowingly creating an unsafe condition, specifically " 'a safe haven or enclave where large groups of minors could, would and did gather and consume alcoholic beverages, to an excess, with complete impunity from any laws or rules and regulations.' " (*Baldwin, supra*, 123 Cal.App.3d at p. 280.)

We are not persuaded that the duties advanced by plaintiff are, in form or substance, any different from those duties claimed and rejected in *Baldwin*, *Crow*, and *Tanja H.* We conclude that, based on this line of cases, the University defendants did not owe an applicable duty to plaintiff to protect her against third parties, and did not stand in a special relationship with plaintiff so as to give rise to a duty to control or to warn her against third parties. (*Tanja H., supra*, 228 Cal.App.3d at p. 444; *Crow, supra*, 222 Cal.App.3d at pp. 207-208; *Baldwin, supra*, 123 Cal.App.3d at pp. 286-287.) We note in this regard that plaintiff has not alleged that the University defendants were aware of a particularized threat posed by Richards, or a specific threat against plaintiff. As stated above, "the courts with good reason have been unwilling to shift moral and legal responsibility away from student perpetrators and onto the heads of college administrators." (*Tanja H.*, at p. 439.) And we are unwilling to do so here. In the absence of a duty of care, plaintiff cannot prevail on her negligence claims.

25

## D. Section 845

In her seventh cause of action, plaintiff seeks to recover damages for negligence and "willful refusal to provide adequate security." Her second amended complaint also contains numerous allegations related to the failure to ensure a secure campus environment. Section 845 provides in pertinent part: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." (§ 845.) Thus, insofar as the second amended complaint seeks to recover damages for the University defendants' failure to provide sufficient police protection, in light of section 845, we conclude that it fails to state a cause of action upon which relief may be granted.

## E. Premises Liability

Language relevant to premises liability is pervasive throughout plaintiff's second amended complaint. In the third cause of action, plaintiff asserts that the University defendants are liable for the existence of a dangerous and defective premises condition existing at American River Hall. The elements of a cause of action for premises liability are the same as those for negligence: duty, breach, causation, and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.)

Plaintiff asserts that a secluded hallway in American River Hall created a "blind spot," facilitating the illicit smuggling of alcohol into the dormitory as well as the transporting of plaintiff to the room where the sexual assault occurred. She complains about the lack of video surveillance anywhere on the floor or the stairways. The fatal flaw in this cause of action is that the condition of the hallway alleged by plaintiff has no meaningful connection to her injuries.

The plaintiff in *Crow* also sought to recover damages based on a theory involving a dangerous property condition at the dormitory. (*Crow, supra*, 222 Cal.App.3d at p. 204.) Specifically, the plaintiff asserted that the CSUS dormitories " 'were in a

dangerous and defective condition in that the University, knowing that [the assailant] was a danger to other students in the dormitories, failed to control him, failed to warn other students about him, failed to enforce its own rules and failed to secure the dormitories from intrusion by persons such as [the assailant] who were known to be a hazard to other students. As a resident of the dormitory, plaintiff was entitled to that protection pursuant to the landlord/tenant relationship as well as the unique relationship created by virtue of his status as a student at [CSUS].' " (*Ibid*.) This court concluded that the trial court was correct in determining that " '[s]ection 835,' " which is the controlling statute for liability for dangerous conditions on public property, " 'does not include an action where the "dangerous condition" is a third party.' " (*Crow*, at p. 205.) The *Crow* court acknowledged that liability may arise where a defect on property abets, or is causally linked to, an act of a third party. (*Ibid.*) However, "when there is no causal link between a dangerous condition and the injury, liability cannot be predicated upon the dangerous condition of property statute." (*Ibid*.) The court further noted that, notwithstanding the fact that the plaintiff purported to base his theory of liability on the dangerous condition on property statute, his arguments, like plaintiff's here, actually appeared to be addressed to CSUS's alleged negligent operation and supervision of its dormitories. (*Id.* at pp. 206-207.)

Later, in *Tanja H.,* the plaintiff attempted to assert, among other things, a premises liability claim based on the fact that there was a shattered light bulb on a landing in a stairwell where part of the sexual assault occurred. (*Tanja H., supra*, 228 Cal.App.3d at pp. 436, 439.) The *Tanja H*. court stated: "We can certainly agree respondents might be liable if appellant had stumbled in a darkened stairway, or even if she had been assaulted by someone lying in wait in the darkness. [Citation.] However, there was no meaningful causal connection here between failing to more quickly fix a shattered light bulb and the sexual assault which began in one dormitory room, continued on the landing, and continued in two other rooms. No assailant was lurking in the dark; appellant's attackers

27

were acquaintances she first encountered in their lighted rooms, where they overcame her resistance. As a matter of law, respondents' alleged failure to fix a light bulb on the stairs was not the legal cause of the assault on appellant." (*Id.* at p. 439.) The *Tanja H.* court further stated: "In connection with her premises liability allegations as to the shattered light bulb, appellant also contends that respondents violated express or implied promises concerning the safety and security of the dormitory premises. However, again, it was not the lack of safe illumination on the stairs, or the lack of security from outside intruders, which caused appellant to be assaulted by acquaintances." (*Ibid.*)

Here, plaintiff's alleged injuries consisted of being sexually assaulted by Richards in his dorm room. Plaintiff alleged that, after she became thoroughly intoxicated in the living room, Richards stood her up "and walked [p]laintiff . . . to his room, while [p]laintiff . . . was resting on him as she had difficulties to walk [*sic*] on her own due to her severe intoxication." Even accepting the material factual allegations of the second amended complaint as true (*Allen, supra*, 234 Cal.App.4th at p. 51), the fact that there were no surveillance cameras in the purportedly secluded hallway was not a proximate cause of her injuries. Analogous to *Crow* and *Tanja H.*, we conclude that, here, the absence of a surveillance camera had no meaningful causal connection to Richards's alleged sexual assault of plaintiff in his dorm room. Plaintiff does not allege that she was assaulted in the hallway, or that she drank to excess in the hallway. She does not allege that Richards came upon her in the hallway. While she does allege that Richards walked her from the living room to his bedroom via the hallway while she "rest[ed] on him," plaintiff advances no allegations from which we can possibly conclude that the absence of a surveillance camera in the hallway had any meaningful causal connection to the sexual assault that followed. Similarly, the mere fact that students may have transported alcohol through this hallway has no meaningful causal connection to the sexual assault.

28

Moreover, as the University defendants observe, "[a] lack of human supervision and protection is not a deficiency in the physical characteristics of public property." (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1352.)

### F.  Conclusion - Negligence Based Causes of Action

Based on all of the foregoing, we conclude that the trial court correctly determined that the third, fourth, seventh, eighth, ninth, tenth, and eleventh causes of action in plaintiff's second amended complaint, grounded in negligence, failed to state a cause of action.  Moreover, since the absence of a duty of care and the absence of a dangerous condition on public property bearing a meaningful causal connection to plaintiff's injuries cannot be cured by further amendment, the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.  (See generally *Schifando, supra*, 31 Cal.4th at p. 1081.)

### IV.  Nuisance

In connection with several of her claims premised on negligence, plaintiff relies on Civil Code sections 3479, defining nuisance, and 3480, defining public nuisance.

The definition of nuisance includes, "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ."  (Civ. Code, § 3479.)  "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."  (Civ. Code, § 3480.)  The California Supreme Court has expressly held that section 815 "does not bar nuisance actions against public entities to the extent such actions are founded on section 3479 of the Civil Code or other statutory provision that may be applicable."  (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 937.)

Nevertheless, the second amended complaint fails to state a cause of action for nuisance. "The elements 'of a cause of action for public nuisance include the existence of a duty and causation.' " (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542 (*Melton*).) We have determined at length, *ante*, that the University defendants did not owe an applicable duty to plaintiff here.

Moreover, " '[w]here negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim.' [Citation.] The nuisance claim 'stands or falls with the determination of the negligence cause of action' in such cases." (*Melton, supra*, 183 Cal.App.4th at p. 542.) Here, inasmuch as plaintiff pleads a cause of action for public nuisance, her cause of action "has no independent vitality, because it merely restates [her] negligence claims 'using a different label.' " (*Id.* at p. 543.)

Accordingly, we conclude that the second amended complaint fails to state a cause of action to recover damages based on nuisance. Furthermore, we conclude that it is not reasonably possible that plaintiff could cure the defect with an amendment.

### V. Intentional Infliction of Emotional Distress

In the fifth cause of action, plaintiff asserted a claim for intentional infliction of emotional distress.

" 'The elements of the tort of intentional infliction of emotional distress are: " '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . .' Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." [Citation.] The defendant must have engaged in "conduct intended to inflict injury or engaged in with the realization that injury will result." ' " (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 896.)

30

The case on which the University defendants rely is instructive. In *Davidson v. City of Westminster* (1982) 32 Cal.3d 197 (*Davidson*), the plaintiff sought to recover damages for, among other things, intentional infliction of emotional distress. (*Id.* at p. 201.) The plaintiff was stabbed by an assailant in a laundromat while police had the laundromat under surveillance following a rash of similar attacks, including one on the prior evening. (*Ibid.*) At the time they were conducting surveillance, the police officers knew the plaintiff was in the laundromat. (*Ibid.*) They observed a man on the premises who closely resembled the attacker from the prior evening, and whom they eventually identified as the likely perpetrator of that attack. (*Ibid.*) While the police officers continued their surveillance of the laundromat, they watched as the suspect entered and left several times. (*Ibid.*) They did not warn the plaintiff, and, eventually, she was stabbed four times. (*Ibid.*) In affirming the judgment of dismissal following the trial court's order sustaining the defendants' demurrer, the California Supreme Court observed that the plaintiff failed to allege that the police officers acted or failed to act for the purpose of causing injury to her. (*Id.* at p. 210.) Our high court further concluded that the police officers' conduct, as alleged by the plaintiff, did not rise to the level of outrageousness deemed so extreme as to exceed all bounds of that which will be tolerated in a civilized community. (*Ibid.*) While acknowledging that the conduct of the police officers may not have constituted their "finest hour," our high court concluded that the failure of the police officers' surveillance plan "was in no way due to any affirmative misconduct on the part of the officers who participated in the stake-out. They started as mere observers and the sum and substance of the criticism directed against them is that they remained such far too long and were late in becoming active participants. Absent an intent to injure, such inaction is not the kind of 'extreme and outrageous conduct' that gives rise to liability under the 'intentional infliction of emotional distress' tort." (*Ibid.*)

Here, notwithstanding plaintiff's protestations to the contrary, her allegations essentially amount to a claim that the University defendants failed to prevent harm to her

31

and failed to protect her from third-party actions. At most, the University defendants' conduct alleged by plaintiff consisted of inaction or willful failure to act. We conclude that the conduct alleged by plaintiff here falls far short of that which will be deemed " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " (*Davidson, supra*, 32 Cal.3d at p. 210, quoting *Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593.)

Accordingly, we conclude that the trial court properly sustained the University defendants' demurrer with respect to plaintiff's fifth cause of action sounding in intentional infliction of emotional distress. Furthermore, we conclude that it is not reasonably possible that plaintiff could cure the defects with further amendment.

## VI. Intentional Misrepresentation and Concealment

Plaintiff's sixth cause of action sounds in fraud, specifically intentional misrepresentation and concealment.

## A. Pleading with Particularity

As to both intentional misrepresentation and concealment, we conclude that plaintiff's allegations failed to satisfy California's pleading requirements for causes of action sounding in fraud. "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (*Lazar*).) " 'This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Ibid.*)

In the sixth cause of action, plaintiff alleged: "Prior to entering into an agreement, [CSUS] represented that it has a safe and secure campus for incoming student[s] to reside on campus. [¶] [] Prior to entering into an agreement, [CSUS] falsely represented that there was NO major crime taken place on campus and the Dangerous Conditions did NOT exist. . . . [¶] [] Defendant, [CSUS] concealed the true facts about the past sexual assault and Sac State's security's inability to conduct proper and competent investigation

32

to prosecute perpetrators." Plaintiff further asserted: "Plaintiff . . . relied on [CSUS]'s misrepresentation and concealment. Plaintiff['s] . . . reliance was reasonable." Plaintiff alleged that, as "a proximate result of sexual assault and battery, [p]laintiff has suffered damages . . . ."

Plaintiff has not pleaded facts asserting how, when, where, by whom, and by what means the alleged representations were made or true facts were concealed. Accordingly, plaintiff has failed to satisfy California's requirement that causes of action sounding in fraud be pleaded with particularity. (See generally *Lazar, supra*, 12 Cal.4th at p. 645.)

## B. Intentional Misrepresentation

"The elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' " (*Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468, 1474.)

Plaintiff's second amended complaint fails to adequately allege that she justifiably relied on any misrepresentation made by the University defendants. She does assert the legal conclusion that she justifiably relied on their alleged representations that there had been no major crimes on campus, and that CSUS had a safe and secure campus. Yet she also alleges, with greater particularity, that, "[o]n or about November 22, 2010, with serious concerns about her safety and security at [CSUS], [p]laintiff . . . through her attorney of record, prepared and forwarded 'Notice of termination of Residency Agreement,' due to lack of security, giving sanctuary to sexual predators, contemning and/or removing evidence related to criminal activities so as to prevent, investigation, arrest and conviction of any criminal activities on campus, and [CSUS]'s refusal to enforce its own policies and procedures." According to plaintiff, on or about December 6, 2010, mere days before the attack, the University defendants rejected plaintiff's demand to terminate her residency agreement.

33

Plaintiff's specific factual allegations that she demanded to be released from the residence agreement in November 2010 because of grave concerns about inadequate security and sexual predators on campus negates her conclusory assertion that, as of December 9 and 10, 2010, she justifiably relied on alleged misrepresentations that the campus was safe and secure, and that no major crimes had occurred on campus. (See generally *Allen, supra,* 234 Cal.App.4th at p. 51 [we treat the demurrer as admitting all material facts properly pleaded].) In the absence of the justifiable reliance element, plaintiff failed to state a cause of action based on intentional misrepresentation. (See *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331 [the absence of any one of the required elements of an action in fraud or deceit will preclude recovery].)

Moreover, under the circumstances of this case, in light of the absence of justifiable reliance, plaintiff cannot establish the fifth element set forth above, that she sustained damages *as a result of* the University defendants' alleged misrepresentation.

Accordingly, we conclude that plaintiff's second amended complaint failed to state a cause of action for intentional misrepresentation.

### C. Concealment

" '[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.' " (*Lovejoy v. AT&T Corp.* (2004) 119 Cal.App.4th 151, 157-158.)

Plaintiff's claim for concealment fails to state a cause of action for the same reason as her claim for intentional misrepresentation. Despite the alleged concealment of

34

facts related to the safety of the CSUS campus, crimes occurring thereon, and occurrences of past sexual assault on campus, at some point prior to Richards's attack, plaintiff learned of alleged prior sexual assaults and demanded to be released from the residence agreement. Based on plaintiff's own factual allegations, she cannot allege that she was unaware of these facts and that she would not have acted as she did if she had known of the concealed facts. Similarly, since she possessed this knowledge well before Richards's alleged attack, she cannot claim that, as a result of the University defendants' concealment, she sustained damages.

Accordingly, we conclude that plaintiff's second amended complaint failed to state a cause of action for concealment.

### D. Conclusion - Intentional Misrepresentation and Concealment

Based on the foregoing, we conclude that plaintiff failed to state a cause of action sounding in fraud, specifically premised on intentional misrepresentation and concealment. Additionally, the defects in the sixth cause of action could not be cured by further amendment, and, accordingly, the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.

### VII. Additional Statutory Grounds for Liability

As previously stated, "[u]nder the California Tort Claims Act (Gov. Code, § 810 et seq.), 'a public entity is not liable for injury arising from an act or omission except as provided by statute. (Gov. Code, § 815, subd. (a); [citation].)' " (*Hoff, supra*, 19 Cal.4th at p. 932, fn. omitted.) We have discussed liability premised on sections 814, 815.2, and 830 et seq., and Civil Code sections 3479 and 3480. Plaintiff sets forth several additional statutory bases for liability in the second amended complaint.

Section 815.4 provides that a "public entity is liable for injury proximately caused by a tortious act or omission of an independent contractor of the public entity to the same extent that the public entity would be subject to such liability if it were a private person. . . ." (§ 815.4.) This section has no relevance to the allegations in plaintiff's

35

second amended complaint, as she makes no allegations concerning any independent contractor.

Section 815.6 provides that, "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (§ 815.6.) " ' "[Section] 815.6 contains a three-pronged test for determining whether liability may be imposed on a public entity: (1) an enactment must impose a mandatory, not discretionary, duty . . . ; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability . . . ; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." [Citation.] Whether an enactment is intended to impose a mandatory duty is a question of law for the court.' " (*County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 638-639, disapproved on another ground in *Martinez v. County of Sonoma* (N.D.Cal. Sept. 12, 2015, No. 15-cv-10953-JST) 2015 U.S. Dist. LEXIS 122427, *36-37.) Plaintiff does not specifically identify any mandatory duty imposed by an enactment.

To the extent that plaintiff relies on Civil Code section 1572, that section merely defines five acts which constitute actual fraud, and imposes no mandatory duty on public entities. Similarly, Civil Code section 1710, which plaintiff also cites, merely defines deceit, and imposes no mandatory duty on public entities. Civil Code section 1709, also cited by plaintiff, provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers," and likewise imposes no mandatory duty on public entities.

As the University defendants point out, the California Supreme Court has expressly held that Civil Code section 1714 ("Responsibility for willful acts or negligence; Proximate cause of injuries resulting from furnishing alcohol to intoxicated

36

person; Liability of social hosts; Provision of alcoholic beverages to persons under 21 years of age"), also cited by plaintiff, may not alone serve as the basis for public entity liability. (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 ["direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714"].)

Plaintiff also cites Civil Code section 3294, which addresses exemplary damages. However, in addition to the fact that that section does not impose a mandatory duty on public entities, section 818 specifically provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."

Finally, plaintiff asserts that, while the University defendants claim they are immune from liability under Business and Professions Code section 25602, subdivision (b), addressing civil liability for the furnishing of alcoholic beverages to an intoxicated person, they fall under the exception to immunity set forth in Business and Professions Code section 25602.1. That section provides: "Notwithstanding subdivision (b) of Section 25602, a cause of action may be brought by or on behalf of any person who has suffered injury or death against any person licensed, or required to be licensed, pursuant to Section 23300, or any person authorized by the federal government to sell alcoholic beverages on a military base or other federal enclave, who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic beverage, and any other person who sells, or causes to be sold, any alcoholic beverage, to any obviously intoxicated minor where the furnishing, sale or giving of that beverage to the minor is the proximate cause of the personal injury or death sustained by that person."

This section, however, does not impose a mandatory duty on public entities. Furthermore, there are no allegations in plaintiff's second amended complaint suggesting

37

that the University defendants sold or caused to be sold any alcoholic beverages to anyone, let alone sold them to an obviously intoxicated minor. To the extent that the second amended complaint can be deemed to allege that the University defendants, by failing to curtail drinking on campus, come within the scope of Business and Professions Code section 25602.1, we disagree. Business and Professions Code "[s]ection 25602.1 is a narrow exception to the Legislature's enactment of what our Supreme Court has termed 'sweeping civil immunity' from liability for injuries to third persons resulting from the furnishing of alcohol to another. [Citations.] As the sole exception to statutory immunity, section 25602.1 must be strictly construed to effect the Legislature's intent." (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1281.) Interpreting the phrase "causes to be sold" in Business and Professions Code section 25602.1, this court held in *Hernandez* that the ordinary use of this language, "and the fact that section 25602.1 articulates no duty to act affirmatively to prevent others, over whom one has no control, from selling alcohol to an obviously intoxicated minor, compel us to construe the statute to require malfeasance, not acquiescence; mere inaction is not sufficient." (*Hernandez*, at p. 1282.) "[T]he phrase 'causes to be sold' requires an affirmative act directly related to sale of alcohol, which necessarily brings about the resultant action to which the statute is directed, i.e., the sale of alcohol to an obviously intoxicated minor. For example, one who, having control over the alcohol, directs or explicitly authorizes another to sell it to a minor who is clearly drunk falls within the statutory language. On the other hand, merely providing a room where alcoholic beverages will be sold by others is not sufficient to satisfy section 25602.1's phrase, 'causes [alcohol] to be sold.' " (*Ibid.*)

Here, plaintiff's factual allegations concerning the provision of alcohol, inasmuch as they can be attributed to the University defendants, allege, at most, acquiescence or inaction rather than malfeasance. On a related note, in *Baldwin*, while the court did not directly address Business and Professions Code section 25602.1, it did discuss the

38

"obvious distinction" between giving or furnishing alcohol and the failure to stop a drinking party. (*Baldwin, supra*, 123 Cal.App.3d at p. 289.)

Accordingly, even assuming Business and Professions Code section 25602.1 could serve as a statutory predicate for liability by a public entity, the University defendants' conduct as alleged by plaintiff does not fall within the scope of that section.

## VIII. Title IX

Plaintiff asserts that she has a cause of action under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq. (Title IX))[7] and related enactments. However, according to plaintiff, the trial court's threat of sanctions prevented her from amending her complaint to allege such a cause of action. We decline to address this contention because plaintiff has forfeited it.[8]

In her opening brief, plaintiff asserts, for the first time in this case and in conclusory fashion, that her second amended complaint contains facts which demonstrate that she has a cause of action pursuant to Title IX. However, she does not furnish any analysis or argument as to how the facts set forth in the second amended complaint would support such a cause of action, and cites no authority to support her position. California Rules of Court, rule 8.204(a)(1)(B), requires that all briefs must support each point "by argument and, if possible, by citation of authority." Thus, plaintiff has forfeited this contention. (*Allen, supra,* 234 Cal.App.4th at p. 52 [when legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and

---

[7] Plaintiff cites Title IX of the Civil Rights Act of 1964. It is clear, however, that she is relying upon Title IX of the Education Amendments of 1972. 20 U.S.C. § 1681 provides that, with limited exceptions, no person shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance on the basis of sex.

[8] Plaintiff has requested that we take judicial notice of certain documents related to her claim that she has a cause of action pursuant to Title IX. In light of our determination, we deny as moot plaintiff's request for judicial notice.

39

pass it without consideration]; *Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1 [plaintiffs' contention in opening brief forfeited because plaintiffs failed to provide any argument or citation to authority in support].)

## IX. Conclusion

We conclude that the trial court did not err in sustaining the University defendants' demurrer to plaintiff's second amended complaint. We further conclude that the trial court did not abuse its discretion in sustaining the demurrer without leave to amend as to all but the first cause of action because it is not reasonably possible that plaintiff could cure the defects with further amendments. Additionally, the trial court properly granted the University defendants' unopposed motion to dismiss the complaint upon plaintiff's failure to timely file and serve a third amended complaint, and properly entered judgment to that effect.[9]

---

[9] In light of our determination, we need not discuss any additional grounds for immunity raised by the University defendants.

## DISPOSITION

The judgment is affirmed.  The University defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      MURRAY    , J.


We concur:


      HULL    , Acting P. J.


      DUARTE    , J.